**Corliss H. GUNDERSON, Petitioner, Appellant,**

v.

**Mark J. HARRINGTON, Respondent.**

**No. C7–00–999.**

Supreme Court of Minnesota.

Sept. 6, 2001.

Rehearing Denied Oct. 9, 2001.

## OPINION

STRINGER, Justice.

Appellant Corliss Gunderson was employed as a receptionist by Harrington Orthodontics, a closely held corporation owned by respondent Dr. Mark Harrington (Harrington), an orthodontist. Gunderson resigned in July of 1998 and brought a civil action against Harrington alleging assault, battery, intentional infliction of emotional distress and negligence. Gunderson's complaint was dismissed by the district court on summary judgment on the basis, in part, that as her employer, Harrington is immune from common law claims for damages arising in the course and scope of employment under the Minnesota Workers' Compensation Act, Minn.Stat. §§ 176.001–.862 (2000) (WCA). The court of appeals affirmed. Gunderson appeals, arguing that Harrington is not an employer under the act. In the alternative, she argues that she has raised a genuine issue of material fact that Harrington's conduct was actionable under the intentional injury exception to the WCA. We affirm.

Harrington practices orthodontics in Plymouth, Minnesota and is the president and sole shareholder of Harrington Orthodontics.[1] His wife Monica is the treasurer. Gunderson was hired in February of 1994 as a part-time receptionist and resigned on July 11, 1998 alleging that Harrington assaulted her on July 10, 1998 and on four other occasions leading up to the July 10 incident. Gunderson alleges the first incident occurred in approximately May of 1997. She testified that she was sitting at her desk when Harrington struck her on top of her head with his open hand and scolded her for forgetting something. She

testified in deposition that she felt "belittled." When asked, "Do you think he meant to hurt you?" Gunderson replied "No."

Gunderson testified that in approximately August of 1997, Harrington again hit her on the head with his hand while she sat at the reception desk and expressed annoyance at her failure to write a patient's name in the scheduling book. She stated that she felt a tingling sensation on the top of her head for a couple of minutes and felt "embarrassed." When asked at deposition "Do you think Dr. Harrington meant to hurt you on that occasion?" Gunderson answered, "I don't know."

Gunderson claims that the third incident occurred when Harrington hit her on the top of the head with a heavy ballpoint pen in November of 1997, again criticizing her for a mistake connected with her job duties. She stated that this blow "hurt more" than the earlier incidents and she felt embarrassed and intimidated. When asked "Do you think he meant to hurt you when he hit you with the pen?" Gunderson again responded, "I don't know."

Gunderson alleges that Harrington hit her the fourth time in February of 1998 with his open hand on the back of her head in front of three patients and reproached her for not knowing whether a patient had scheduled a follow-up appointment. Gunderson testified that this blow was harder than the ones before and recalled "rubbing the area" for half an hour after the incident. Gunderson again testified in deposition that she did not know whether Harrington intended to hurt her with the blow. Following this incident, Gunderson complained to her co-workers about Harrington's behavior but did not raise the issue with Harrington or his wife.

---

**1.** The record refers to the corporation as both Harrington Orthodontics, Ltd. and Harring-
ton Orthodontics, Inc.

Gunderson alleges that Harrington struck her so severely a fifth time on July 10, 1998 that she decided to resign the next day. Gunderson testified that she was sitting at the reception desk when Harrington came into the area accompanied by a young boy who had just received braces. When she asked the patient for his name, Harrington forcefully hit her on the back of the head with his open hand while reprimanding her for not knowing his name after he'd spent two hours having his braces put on. Gunderson stated that the force of the blow caused her head to go forward "like whiplash," straining her neck. Gunderson claims that the boy witnessed the blow and that she and the boy looked at one another for a moment after Harrington hit her. In deposition she was asked whether she thought Harrington meant to hurt her and she answered, "I think with the force of the hit, I think it was intentional." When asked, "Is it possible that he just got carried away out of frustration without intending to hurt you?" Gunderson answered, "I don't know."

Gunderson testified that she did not speak with Harrington and finished her work quickly that day so she could leave the office. Later in the evening she discussed the incident with her husband and friends. They urged her to go to the police and quit her job. The next day Gunderson went to the Plymouth police station and filed a report, and on the advice of the police she then went to an urgent care center. Gunderson testified that a physician examined her head and noted swelling. The record does not contain a medical report.

Gunderson testified that she suffered from head and neck pain following the July 10 incident and she had feelings of insecurity, embarrassment and humiliation. She also stated that bruising and swelling on the back of her head made it difficult for her to comb her hair or rest her head on a pillow for one to two weeks.

The workers' compensation insurer for Harrington Orthodontics, Berkley Administrators, accepted Gunderson's claim for a July 10, 1998 head injury and agreed to pay reasonable medical expenses. In an application for reemployment insurance benefits, Gunderson characterized the first four incidents as "little swats on the head."

Harrington was charged with fifth-degree assault for the July 10 incident. According to Harrington, he paid $100 in costs, completed anger management classes, and committed no similar offenses for one year, in exchange for the city dismissing the charge.[2]

Gunderson brought this civil action against Harrington alleging assault, battery and intentional infliction of emotional distress. The complaint was later amended to include claims of negligent failure to refrain from making offensive contact with Gunderson and negligent failure to take reasonable steps to ensure that the workplace at Harrington Orthodontics was free from violence.

Harrington submitted an affidavit stating that Gunderson "was one of my most valued and trusted employees, and I considered her a friend. I would never do anything to intentionally injure anyone, certainly not a valued employee whom I considered to be a friend." At deposition, Harrington testified that he does not recall the first four alleged incidents and that, "I do believe that it is possible that I could have done that, but I don't have a specific recollection of any particular incidents." Harrington denied hitting Gunderson on July 10, 1998 and stated that he never intended to injure her. Harrington identi-

---

2. The record does not contain an official disposition of the criminal case.

fied the patient whom Gunderson alleged witnessed the July 10 assault as 14-year-old Ryan Wolcott. In a statement not under oath, apparently prepared by the attorney representing Harrington on the fifth-degree assault charge, Wolcott asserted "I never saw Dr. Harrington hit his receptionist or any other employee." Gunderson acknowledged it was Walcott who witnessed the assault.

The district court dismissed Gunderson's suit on summary judgment. The court held that because Dr. Harrington is the alter ego of Harrington Orthodontics, Harrington is Gunderson's employer, and because the alleged injuries arose in the course of employment, Gunderson must seek the remedies provided by the WCA unless some exception applies. The court further held that the intentional injury exception does not apply because, accepting all of Gunderson's allegations as true, the record does not support a reasonable inference that Harrington acted with conscious and deliberate intent to injure Gunderson. The court noted that Gunderson stated she did not think that Dr. Harrington meant to hurt her when he first hit her on the top of the head in late spring of 1997, and that she did not know if Harrington meant to hurt her when he hit her on the other occasions. The court stated, "[t]o allow an employee a civil tort action for what Gunderson herself has characterized as little swats on the head would trivialize the intentional injury exception and eviscerate the exclusive remedy doctrine." Finally, the court concluded that Gunderson's claims for intentional infliction of emotional distress fail as a matter of law because she offered no proof of extreme emotional distress nor physical manifestation of her emotional distress.

The court of appeals affirmed in a divided opinion. The court held that Harrington is the only agent of Harrington Orthodontics and as such, a "[h]olding that respondent was not appellant's employer would ignore reality." *Gunderson v. Harrington*, 619 N.W.2d 760, 763 (Minn.App.2000). Further, Harrington allegedly injured Gunderson while acting in his capacity as her supervisor because he was dissatisfied with her job performance. The court of appeals held that denying Harrington the protection of the exclusive liability provision because he chose to do business as a corporation would frustrate the stated purpose of the WCA: mutual renunciation of common law rights and defenses by employers and employees alike. *Gunderson*, 619 N.W.2d at 763 (quoting Minn.Stat. § 176.001 (1998)). In reaching its decision, the court cited *Fox v. Swartz* for the well-accepted principle that the WCA governs the master-servant relationship "to the exclusion of any liability at common law." *Fox v. Swartz*, 228 Minn. 233, 36 N.W.2d 708, 710 (1949) (holding employee may not maintain separate damages suit under the civil damages act for injury compensable under workers' compensation).

The court also affirmed the dismissal of Gunderson's claim under the intentional injury exception to the WCA, ruling that she failed to present facts supporting a reasonable inference that Harrington acted with a conscious and deliberate intent to injure her. The dissent agreed with the majority that the intentional injury exception does not apply under the facts, but asserted that Harrington is an employee of Harrington Orthodontics and therefore subject to suit as Gunderson's co-employee. *Gunderson*, 619 N.W.2d at 766 (Klaphake, J., dissenting).

On review here, Gunderson argues that dismissal was error as a matter of law because the corporation and not Harrington is her "employer" under the WCA,[3]

---

**3.** The WCA defines an employer as "any per- son who employs another to perform a ser-

and therefore Harrington's actions should be measured by the standards applicable to co-employees. Gunderson argues that Minn.Stat. § 176.011, subd. 10 clearly and unambiguously defines the employer as the corporation and does not state that "sole shareholders" or "alter egos" of a corporation are also employers for purposes of the act. Gunderson argues that it would be fundamentally unfair to allow Harrington to "have it both ways"—having the benefit of the corporate entity as a shield against personal liability for actions by creditors and others while at the same time claiming the protection offered by the exclusive remedy provision of the workers' compensation statute as the "alter ego" of Harrington Orthodontics.

Gunderson asserts that her position is supported by a recent decision of the court of appeals, *Buck v. Freeman,* 619 N.W.2d 793, 796 n. 3 (Minn.App.2000) (concluding that appellant failed to present a genuine issue for trial on claim that principal was co-employee because appellant presented no evidence that respondent organized his business as a corporation), and decisions from other jurisdictions. *See Crees v. Chiles,* 437 N.W.2d 249 (Iowa App.1988) (holding that corporation is the employer for purposes of the state workers' compensation act); *see also Barnette v. Doyle,* 622 P.2d 1349, 1352–55 (Wyo.1981) (holding that president, director, and shareholder of corporation was co-employee). Gunderson further argues that the court of appeals decision would require workers' compensation insurers to insure "alter egos" as "employers." [4]

Finally, Gunderson argues that even if the court determines Harrington is her employer for purposes of the WCA, she has raised genuine issues of material fact regarding Harrington's liability under the intentional injury exception to the statute. She argues that Minnesota law does not immunize employers who assault and batter their employees. Gunderson maintains that the court of appeals improperly intruded on the province of the trier of fact by making a credibility determination at the summary judgment stage and making a factual determination as to Harrington's intent. Further, Gunderson asserts that the ruling below has created an impossible burden of production requiring an admission by the employer that he intended to injure the employee.

Harrington counters that the workers' compensation definition of employer, "any person who employs another to perform a service for hire," Minn.Stat. § 176.011, subd. 10, unambiguously establishes that he was Gunderson's employer at the time of the alleged assaults. Further, Harrington argues that changing the form of his business from a sole proprietorship to a corporation, without change as to substance, should not strip him of the protection he would have had as a sole proprietor under the workers' compensation statute. Harrington asserts that if Gunderson is allowed to maintain a common law suit against him it would frustrate the legislative intent of mutual renunciation of common law rights and defenses embodied in the workers' compensation scheme.

vice for hire; and includes [a] corporation, partnership, limited liability company, association, group of persons, state, county, town, city, school district or governmental subdivision." Minn.Stat. § 176.011, subd. 10 (2000).

4. In response to Gunderson's arguments regarding *Buck v. Freeman,* Harrington argues that the issue presented here was not before

the court of appeals in that case. *Buck v. Freeman,* 619 N.W.2d at 796. Harrington asserts that this court should not follow the cases from other jurisdictions cited by Gunderson as they are factually distinguishable and are based on the application of the particular language of their state workers' compensation statutes.

Harrington further contends that Gunderson has failed to state facts supporting a claim under the intentional injury exception to the WCA. He cites Gunderson's failure to seek medical attention until advised to do so by the police, her deposition testimony that she did not know whether Harrington meant to hurt her and her characterization of the first four assaults as "little swats on the head." Harrington argues that a reasonable jury could at worst infer that he acted impulsively or reflexively but could not find he acted with "the mental deliberation necessary to form an actual intent to injure." Any other finding, Harrington argues, would require the use of the "implied intent" or "substantial certainty" tests rejected by this court in claims involving the intentional injury exception to the WCA. *See Hildebrandt v. Whirlpool Corp.*, 364 N.W.2d 394, 396–97 (Minn.1985).

## I.

■■■ On review of summary judgment, we view the evidence in the light most favorable to the party against whom summary judgment was rendered. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993). The court determines whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). The interpretation of a statute and the determination of whether a genuine issue of material fact exists are subject to de novo review. *Brookfield Trade Center v. Ramsey County*, 609 N.W.2d 868, 874 (Minn. 2000).

As an initial observation, we note that the WCA is based on a policy of "mutual renunciation of common law rights and defenses by employers and employees." Minn.Stat. § 176.001 (2000). The exclusive remedy provision of the WCA states that "[t]he liability of an employer prescribed by this chapter is exclusive and in the place of any other liability to such employee * * * entitled to recover damages on account of such injury or death." Minn.Stat. § 176.031 (2000). The WCA defines an employer as "any person who employs another to perform a service for hire; and includes [a] corporation, partnership, limited liability company, association, group of persons, state, county, town, city, school district, or governmental subdivision." Minn.Stat. § 176.011, subd. 10.

■■■ Both parties argue that the clear and unambiguous language of the WCA supports their position regarding whether Harrington is Gunderson's employer. Gunderson emphasizes that the act states that a corporation may be an employer but doesn't list "shareholder" or "alter ego" in the definition of employer. She also notes that a corporation is a legal entity separate from its shareholders. Harrington argues that as the court of appeals held, the "common sense" reading of "any person who employs another to perform a service for hire" includes Harrington, and that as sole shareholder and president of Harrington Orthodontics, a corporation organized solely to support his professional practice as an orthodontist, he and the corporation are virtually indistinguishable.

■■■ Recognizing Harrington as Gunderson's employer is consistent with the reality that the form but certainly not the substance of his business changed when Harrington incorporated. The corporation was for all practical purposes Harrington personally as its sole principal and shareholder, and it could act only through him. To rigidly cling to the form of the corporation, ignoring Harrington's sole authority to manage and direct Gunderson's employment, would frustrate the purpose of the WCA: "mutual renunciation of common law rights and defenses by employers and

employees alike." Minn.Stat. § 176.001 (2000).[5]

The dissent correctly indicates that our holding is not based on an equitable pierce of the corporate veil. The dissent cites our decision in *Wessin v. Archives Corp.*, 592 N.W.2d 460 (Minn.1999) for the proposition that a closely held corporation must be treated the same as all other corporations under Minnesota statutes for purposes of the WCA. The corporation in that case had a small number of shareholders and the issue presented was whether the actions brought were direct or derivative. *Wessin*, 592 N.W.2d. at 462. In this case, much like a sole proprietorship, Harrington is the president and sole shareholder of the corporation. The clear indication that Harrington himself acted as the corporation and the well-settled doctrine that the WCA is intended to replace the uncertainty of tort actions against employers and provide the exclusive remedy for employment-related injuries supports our holding that Harrington is Gunderson's employer under the WCA.

We hold that Harrington Orthodontics is so completely dominated by and identified with Harrington that he must be considered Gunderson's employer for purposes of the WCA. Therefore, Gunderson is restricted to the remedies provided by the WCA for injury by Harrington in the course of her employment.[6] We affirm the court of appeals ruling that Harrington is Gunderson's employer as defined by the WCA.

## II.

We turn next to Gunderson's claim that even if Harrington is deemed to be her employer, the intentional injury exception [7] to the exclusive remedy provision of the WCA should apply. The intentional injury exception was first recognized in *Boek v. Wong Hing*, 180 Minn. 470, 231 N.W. 233 (1930) where the employer swung a heavy broom handle at the employee, dislocating two finger joints. We stated:

> No case has been cited where it has been held that one who willfully assaults and injures a workman while in the

---

5. *See also* 6 Larson's Workers' Compensation Law § 111.02[3] (2000) (stating that where "the defendant so dominates the corporation, perhaps as stockholder, president, and manager, that the defendant can honestly be said to be the alter ego of the corporation, this in itself may suffice to bar any action against him or her.")

6. The cases from other jurisdictions cited by Gunderson are not consistent with this court's interpretation of the WCA and fail to persuade this court to hold in Gunderson's favor. We declined to apply the "dual capacity" doctrine in *Kaess v. Armstrong Cork Co.* without clear indication that the employer possesses a second persona so separated from the status as employer that it is a separate legal entity. 403 N.W.2d 643, 645 (Minn.1987). The liability of the corporation owner in *Barnette v. Doyle*, a Wyoming case cited by appellant, was based on the holding that the owner's duties as manager of day-to-day operations gave rise to a duty in his capacity as co-employee. 622 P.2d 1349, 1353–56 (Wyo. 1981). The holding in *Crees v. Chiles* was based on the unique language of the Iowa workers' compensation act and *Barnette*. 437 N.W.2d 249, 252–53 (Iowa App.1988). Gunderson's argument based on the court of appeals decision in *Buck* is similarly unhelpful, as it relies upon dicta. *See Buck*, 619 N.W.2d at 796 n. 3.

7. We utilize the term 'intentional injury exception' rather than 'intentional tort exception' throughout this opinion, as it most closely conforms with the well-settled standard 'conscious and deliberate intent to inflict injury.' *See, e.g., Kaess*, 403 N.W.2d at 644–45, *Hildebrandt*, 364 N.W.2d at 396, *Breimhorst v. Beckman*, 227 Minn. 409, 426, 35 N.W.2d 719, 730 (1949); *see also Boek v. Wong Hing*, 180 Minn. 470, 472, 231 N.W. 233, 234 (1930) (utilizing the "willfully and intentionally inflicted bodily injuries" standard).

course of his employment, be he an employe[e], employer or a stranger, when sued for the tort, can successfully interpose as a defense that the plaintiff and his employer are under the workmen's compensation act, and his sole remedy is thereunder. And we think none can be found, for it would be a perversion of the purpose of the act so to hold.

180 Minn. at 471, 231 N.W. at 233–34. In *Breimhorst v. Beckman*, we rejected a claim under the intentional injury exception where the employee failed to present a triable issue of fact regarding whether the employer had *"conscious and deliberate intent directed to the purpose of inflicting an injury,* and such intent may not be inferred from mere negligence, though it be gross." 227 Minn. 409, 426, 35 N.W.2d 719, 730 (1949) (holding that the exclusive remedy for employee's injury from concealed spring gun on employer's premises was under the WCA).[8]

Later in *Hildebrandt v. Whirlpool Corp.* we rejected the argument that an employer's knowledge of a "substantial certainty" of injury to an employee should trigger the intentional injury exception and reiterated the "conscious and deliberate intent to inflict injury" standard. 364 N.W.2d 394, 396–97 (Minn.1985) (rejecting a claim under the intentional injury exception where employees presented evidence that the employer intentionally misrepresented the nature of a toxic chemical employees were required to handle). Most recently in *Kaess v. Armstrong Cork Co.* we stated again that a "conscious and deliberate intent to inflict injury" is necessary for the

intentional injury exception to apply. 403 N.W.2d 643, 644–45 (Minn.1987) (dismissing an action in strict liability for injuries sustained through employee's work with insulation materials containing asbestos manufactured by the employer).

 To successfully oppose summary judgment Gunderson must identify material facts in the record creating a genuine issue as to whether Harrington consciously and deliberately intended to injure her. The stated purpose of the Rules of Civil Procedure—securing a just, speedy, and inexpensive determination of an action—is furthered by allowing a court to dispose of an action on the merits if there is no genuine dispute regarding the material facts, and a party is entitled to judgment under the law applicable to such facts. Minn. R. Civ. P. 1, 56.03. To raise a genuine issue of material fact, Gunderson must provide more than "evidence which merely creates a metaphysical doubt as to a factual issue and which is not sufficiently probative with respect to an essential element of [her] case to permit reasonable persons to draw different conclusions." *DLH, Inc. v. Russ,* 566 N.W.2d 60, 71 (Minn.1997). She has failed to do so.

 While Gunderson alleges that Harrington struck her on five different occasions, as to the first incident she testified that she did not think Harrington intended to injure her, and as to the next three incidents she testified that she did not know if he intended to hurt her. She characterized them as "little swats on the head," failed to mention the first three incidents to anyone, and sought no medical

---

8. The dissent argues that *Breimhorst* cannot stand for the principle that there must be an intent to inflict injury for the exception to apply because the facts presented in that case indicated the employer did not know of the device that injured the employee and was at most negligent. In response to arguments regarding newly discovered evidence that the employer knew that the device was on the premises and had once accidentally discharged tear gas, we held that "such knowledge only served to put him on notice * * * [of] a tear-gas mechanism which, if used for the purpose for which it was intended, might inflict temporary discomfort but not bodily harm." *Breimhorst,* 227 Minn. at 419, 35 N.W.2d at 727. Therefore, our holding in *Breimhorst* requires an intent to inflict injury.

treatment for the first four incidents. As to the incident on July 10, 1998 she gave conflicting testimony, at first saying that "with the force of the hit, I think it was intentional," but later saying she didn't know if Harrington might have hit her out of frustration but without intending to hurt her. As the only other evidence in the record of Harrington's intent is his denial of an intent to injure, Gunderson's testimony clearly is the evidence most favorable to her claim. We are compelled to conclude that Gunderson's belief that Harrington did not intend to hurt her, her statement that she didn't know if he intended to hurt her, and her conflicting beliefs as to the July 10 incident do not create genuine issues of material fact of Harrington's intent to injure her to oppose summary judgment. "A genuine issue of material fact for trial must be shown by substantial evidence." *Brookfield,* 609 N.W.2d at 874. The evidence most favorable to Gunderson's claim falls short of the substantial evidence standard.

While the evidence supports a finding that Harrington's conduct was inappropriate, Gunderson has failed to present sufficiently probative evidence to establish the existence of a genuine issue of material fact for trial on the question of whether Harrington acted with a conscious and deliberate intent to inflict physical injury. We hold that Gunderson has failed to raise a genuine issue of material fact regarding an essential element necessary to maintain an action under the intentional injury exception—that Harrington acted with a conscious and deliberate intent to inflict injury. Therefore Gunderson may not maintain a common law action for damages under the intentional injury exception to the exclusive remedy provided by the WCA.

Affirmed.

GILBERT, PAGE, PAUL H. ANDERSON, JJ., dissenting.

## DISSENT

GILBERT, Justice (dissenting).

I respectfully dissent from the majority's opinion. This case arises from the district court's granting of a motion for summary judgment. The court ruled that a co-employee's intentional tort claims against a sole shareholder of a corporation who undisputedly committed the tort were precluded by the exclusive remedy provision of the WCA, and that the assaults were not intentional torts subject to the intentional torts exception of the exclusive remedy provision. The court of appeals held that an "employer" does not lose the protection of the exclusive liability provision of the WCA by choosing to incorporate.

By affirming decisions of the district court and court of appeals, the majority permits a co-employee/sole shareholder of a closely held corporation to use the WCA to shield himself from liability for intentional assaults on another employee. It is hard to fathom that the legislature intended such a result. Doing business in the corporate form does establish some limits of liability for shareholders, even sole shareholders, and this is often a reason for incorporation. *Victoria Elevator Co. v. Meriden Grain Co.,* 283 N.W.2d 509, 512 (Minn.1979). A corporation is generally considered a legal entity separate from the shareholders. *Milwaukee Motor Transp. Co. v. Comm'r of Taxation,* 193 N.W.2d 605, 608, 292 Minn. 66, 71 (1971). The corporation owns its own property, and it must answer for its own contractual obligation and tort liabilities. *Id.* As Gunderson points out, the corporate entity Harrington Orthodontics generally shields Dr. Mark Harrington, D.D.S. from personal liability for actions by creditors and others. Harrington Orthodontics issued Gunder-

son's paychecks, and if Gunderson were to be owed wages or benefits, she would not be able to maintain an action against Harrington personally. The corporate entity would be considered the employer liable for the wages owed. The court of appeals' holding is boldly asserted without authority. The definition of employer should not change for the purpose of applying the WCA.

However, the corporate shield is not without bounds. In certain circumstances, it is possible to "pierce the corporate veil" and hold a shareholder personally liable where there is fraud or where the shareholder is the "alter ego" of the corporation. *Victoria Elevator Co.,* 283 N.W.2d at 512. When the courts use the alter ego theory to impose liability, they are "concerned with reality and not form, with how the corporation operated and the individual defendant's relationship to that operation." *Id.* In *Victoria Elevator,* we held that where the formalities of corporate existence are disregarded, the corporate existence cannot be allowed to shield the individual from liability for damages incurred by those dealing with the corporation. *Id.* But, in this case, Gunderson is not seeking to.pierce the corporate veil; rather, she is simply asking that a co-employee be held personally accountable for his intentional torts.

The majority reasons that Harrington is not personally responsible for his own intentional tort because of his status as the "sole principal and shareholder" and that the corporation is "completely dominated by and identified with Harrington." The majority argues Harrington should be transformed into being the employer when applying the WCA even though Harrington Orthodontics, a duly authorized Minnesota corporation, is the employer under the law. The reasoning that the majority uses in making its argument is the type of

reasoning usually used by the courts when applying an equitable remedy, such as an alter ego theory, in order to pierce the corporate veil to attach liability to the individual shareholder. *See id.* Instead, the majority uses this same equitable reasoning here to shield Harrington from the consequences of his own active wrongful conduct. It concludes that Harrington is the employer for the purposes of the WCA. Therefore, he is personally immune from liability for his intentional assault on an employee. Even though the majority might not label it as such, this is an inappropriate application of the alter ego theory. The alter ego theory was never meant to shield either sole proprietors or co-employees from liability for intentional torts.

The majority's decision also violates one of the maxims of equity: "he who seeks equity must do equity, and he who comes into equity must come with clean hands." *Gully v. Gully,* 599 N.W.2d 814, 825 (Minn. 1999) (quoting *Hruska v. Chandler Assocs., Inc.,* 372 N.W.2d 709, 715 (Minn. 1985)). Although Harrington is seeking equity, he is not coming to this court with clean hands and has not done equity to his long-time loyal receptionist. However, in granting Harrington equity, the majority holds that an individual employee of a corporation can escape liability for a variety of tortious conduct toward a fellow corporate employee, as long as that individual dominates the corporate entity.

The majority's rhetoric about changing the form and not the substance of Harrington's business upon incorporation is added without citing to any authority. This statement is in fact contrary to Minn. Stat. § 302A.161 (2000), which lists the powers held by a corporation independent of its shareholders, and case law where we have stated that "a closely held corporation is still a corporation with all of the

rights and limitations proscribed by the legislature." *Wessin v. Archives Corp.*, 592 N.W.2d 460, 466 (Minn.1999). Importantly, the notion that because a corporation "is so completely dominated by and identified with Harrington, he must be considered Gunderson's employer for the purposes of the WCA" is a totally new judicial principle added for effect, but again, without any authority. In the past, the corporate form has only been disregarded when corporate formalities have been disregarded or where there has been fraud to justify piercing the corporate veil. In this case, those elements are not present. Accordingly, Harrington Orthodontics must be considered the employer for the purposes of the WCA, just as it is for all other purposes.

If Harrington Orthodontics is the employer, Harrington should be considered Gunderson's co-employee under the WCA. Importantly, the WCA does not shield co-employees from liability for intentional torts. A co-employee is not liable for personal injury of another employee unless the injury was a result of gross negligence or was intentionally inflicted by the co-employee. Minn.Stat. § 176.061, subd. 5(c) (2000). Gunderson's injuries did not happen by accident. Harrington intentionally inflicted them when he hit Gunderson on the back of the head.

In addition to Minn.Stat. § 176.061, subd. 5(c), our case law indicates that the WCA does not shield individuals from liability for intentional torts. The majority concludes that the intentional tort exception to the WCA does not apply. It should be noted that the majority labels this exception the "intentional injury exception" because the "well-settled standard [is] 'conscious and deliberate intent to inflict injury.'" This court has in fact repeatedly referred to this exception as the "intentional tort" exception even in those cases cited by the majority. See *Kaess*, 403

N.W.2d at 644; *Hildebrandt*, 364 N.W.2d at 394. The majority cites *Breimhorst* for the premise that there must be an intent to inflict injury for the intentional tort exception to apply. The very language cited by the majority demonstrates that *Breimhorst* is not analogous to the case at hand. *Breimhorst* involved a spring gun that injured an employee of a restaurant. The court concluded that "intent may not be inferred from mere negligence, though it be gross." *Breimhorst*, 227 Minn. at 426, 35 N.W.2d at 730. Here, Harrington's intent to hit Gunderson on the head is clear and an inference is not required. No matter how the facts are viewed, Harrington's conduct cannot be viewed as negligence. There is no question that the case at hand involves an intentional tort.

The majority also cites *Hildebrandt* and *Kaess* for the proposition that in order for the intentional tort exception to apply, there must be a "conscious and deliberate intent to inflict injury." Both cases involved injuries arising from exposure to toxic materials. The plaintiffs alleged that the course of conduct was intentional and injury was foreseeable. Neither case involved an intentional tort—assault—like we have here. *Boek v. Wong Hing* did involve an intentional assault. 180 Minn. 470, 231 N.W. 233 (1930). There, we held that just as an employee can maintain a claim against a third party for an intentional assault, so should an employee be able to maintain such an action against an employer for an intentional assault. 180 Minn. at 471–72, 231 N.W. at 234. "An employer who intentionally and maliciously inflicts bodily injuries on his servant should occupy no better position than would a third party not under a Compensation Act * * *." *Id.*

Summary judgment is only appropriate where a review of the evidence shows that there is no genuine issue as to material fact and that either party is entitled to

judgment as a matter of law. Minn. R. Civ. P. 56.03. On review of summary judgment, the court reviews the evidence in the light most favorable to the party against whom the summary judgment was rendered. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993). Even if the majority is correct and intent to injure is required for the intentional tort exception to apply, whether Harrington intended to cause injury when he assaulted Gunderson at least presents a question of fact that cannot be dismissed on summary judgment. The parties do not dispute that Harrington intended to strike Gunderson on numerous occasions. On the most recent occasion, he hit her hard enough to cause bruising and pain for several days. A jury might infer from the bruising that Harrington intended to hit Gunderson quite hard and that he intended to injure her. Just because Gunderson said in a deposition that she did not know whether Harrington intended to injure her, does not mean that it is conclusive that the intent to injure did not exist. Regarding the last assault, Gunderson was asked whether she thought Harrington meant to hurt her, and she answered, "I think with the force of the hit, I think it was intentional." This testimony is evidence that Harrington did intend to injure Gunderson. While not the strongest of evidence, it at least presents a question of fact.

I would therefore reverse and remand for trial on the merits.

PAGE, Justice (dissenting).

I join in the dissent of Justice Gilbert.

ANDERSON, PAUL H., Justice (dissenting)

I join in the dissent of Justice Gilbert.