Jeremy **MEINTSMA**, Appellant,

v.

**LORAM MAINTENANCE OF WAY, INC.,** Respondent,

**Richard Lee Mendez and Steven Wayne Bachler,** Respondents,

**James Valenta,** Respondent,

**Eric Leon Havisto, et al.,** Defendants,

and

**Loram Maintenance of Way, Inc.,** Cross–Claim Plaintiff,

v.

**Dennis Darnell Ramsey, et al.,** Cross–Claim Defendants,

and

**Loram Maintenance of Way, Inc.,** Third–Party Plaintiff,

v.

**United Steelworkers of America, Local 2002,** Third–Party Defendant.

Nos. A03–416, A03–425, A03–861.

Supreme Court of Minnesota.

July 29, 2004.

Petition for Rehearing filed Aug. 17, 2004.

Rehearing Denied Aug. 20, 2004.

Marcia S. Rowland, Chadwick and Mertz, P.S.C., Chanhassen, for Appellant.

Joseph W. Hammell, Eric C. Sjoding, Dorsey & Whitney, L.L.P., Minneapolis, Loram Maintenance of Way, Inc.

Michelle D. Christensen, Holly J. Tchida, Murnane, Conlin, White & Brandt, St. Paul, for Richard Lee Mendez and Steven Wayne Bachler.

Lawrence M. Rocheford, Jessica E. Schwie, Jardine, Logan & O'Brien, L.L.P., Lake Elmo, for James Valenta.

Michael J. Ford, James S. McAlpine, Krista L. Durrwachter, Quinlivan & Hughes, P.A., St. Cloud, for Amicus Curiae for Minnesota Defense Lawyers Association.

## OPINION

PAGE, Justice.

This case arises out of a "birthday spanking" given to appellant Jeremy Meintsma[1] by five co-employees with a two-by-four fashioned into a paddle at his place of employment, Loram Maintenance of Way, on May 1, 2001. Meintsma sued Loram and the co-employees individually, alleging claims of assault and battery, aiding and abetting assault and battery, respondeat superior, negligent hiring, negligent supervision, negligent retention, and constructive discharge, as well as a claim for punitive damages. According to Meintsma, the birthday spanking resulted in injuries to his buttocks, wrists, and elbow. Loram and the employees moved for summary judgment, arguing that Meintsma's exclusive remedy was under the Workers' Compensation Act (WCA). The district court granted summary judgment to Loram, but denied the employees' motion. With respect to Loram, the district court found that Meintsma's injuries arose out of his employment and did not come within either the WCA's assault or intentional injury exceptions. With respect to the employees, the court concluded that because Meintsma's primary claim was for battery, an intentional tort, the WCA's exception for injuries intentionally caused by co-employees applied. Both Meintsma and the employees appealed, and the court of appeals affirmed with respect to Loram.

With respect to the employees, the court of appeals reversed, concluding that the WCA provided the exclusive remedy for Meintsma's injuries because there was no evidence that those injuries were intentionally caused by the employees. The issue we must decide is whether the WCA provides the exclusive remedy for Meintsma's claims against Loram and the employees.

Meintsma began working at Loram in August of 2000. There was a tradition at Loram of union employees giving other union employees birthday spankings. According to one of the defendants, these spankings were taking place when he started working at Loram in 1985. The spankings occurred on Loram's premises either during or immediately after work hours. Typically, a small group of employees would surround the employee celebrating his birthday, wrestle him to the ground, and hit him on the buttocks. Oftentimes they struck the employee with a wooden paddle that had been fashioned at Loram. The record indicates that not every employee received a birthday spanking and that on at least one occasion a spanking occurred for an event other than a birthday. Before Meintsma's spanking, no employee had complained to Loram about being injured as a result of a spanking.

Some members of Loram's management were aware of the spanking practice, and a manager participated in at least one spanking. Indeed, according to Meintsma, sometime before his spanking he approached a supervisor and asked what would happen "when these guys tr[y] to get me on my birthday if I defend myself." Meintsma also claims that on the day he was spanked he approached a supervisor

---

**1.** As a result of a typographical error in the appellate courts' case management system, Meintsma was misspelled in the court of appeals' opinion and is corrected here.

and indicated that he did not want to be spanked.

Meintsma's spanking occurred a few days after his birthday when a group of his co-employees grabbed him from behind, wrestled him off his stool and onto the concrete floor, and then spanked him with a wooden paddle fashioned from a two-by-four. The manner and number of times Meintsma was spanked is disputed. According to Meintsma, after the spanking, he spit blood on the floor, got up and shook hands with the individuals who spanked him, went to the washroom, and cleaned up with the help of one of the co-employees.

That evening Meintsma went to the emergency room. There, the doctor found that Meintsma had contusions to his back, abrasions to his left arm, muscle spasms in his lower back, and a superficial cut on his left wrist. Upon discharge, Meintsma was given pain medication and told not to go to work for the rest of the week. The emergency room doctor reported the incident to the Wright County Sheriff. Meintsma also reported the incident to the police. Ultimately, the individuals who participated in the birthday spanking were charged with fifth-degree assault and disorderly conduct. They eventually pleaded guilty to disorderly conduct and received a stay of imposition of sentence for one year.

The day after the spanking, Meintsma notified Loram of his injuries and Loram filed a first report of injury form. Loram's workers' compensation insurance carrier initially accepted liability, but, upon learning that criminal charges had been filed, the insurer denied coverage based on its determination that Meintsma's injuries were the result of an intentional assault and therefore fell outside of the WCA. Loram also terminated the employees in-volved in the spankings. The union filed a grievance on behalf of those employees and eventually two of the employees were reinstated.[2]

■ When reviewing a grant of summary judgment, we view "the evidence in the light most favorable to the party against whom summary judgment was rendered." *Gunderson v. Harrington*, 632 N.W.2d 695, 701 (Minn.2001). We consider "whether there are any genuine issues of material fact and whether the district court erred in its application of the law." *Id.* Both "[t]he interpretation of a statute and the determination of whether a genuine issue of material fact exists are subject to de novo review." *Id.* We draw all factual inferences in favor of the nonmoving party. *O'Malley v. Ulland Bros.*, 549 N.W.2d 889, 897 (Minn.1996).

■ Minnesota's workers' compensation system "is based on a mutual renunciation of common law rights and defenses by employers and employees alike." Minn. Stat. § 176.001 (2002). Employers "are liable to pay compensation in every case of personal injury * * * of an employee arising out of and in the course of employment without regard to the question of negligence." Minn.Stat. § 176.021, subd. 1 (2002); *see also Foley v. Honeywell, Inc.*, 488 N.W.2d 268, 271 (Minn.1992). The employer's liability to pay compensation "is exclusive and in place of any other liability." Minn.Stat. § 176.031 (2002). The exclusive remedy provision "is part of the *quid pro quo* of the workers' compensation scheme in which the employer assumes liability for work-related injuries without fault in exchange for being relieved of liability for certain kinds of actions and the prospect of large damage verdicts." *Karst v. F.C. Hayer Co.*, 447 N.W.2d 180, 183–84 (Minn.1989).

**2.** The other three employees settled their grievances.

As a preliminary matter, Meintsma asserts that his injuries are not covered by the WCA. The WCA excludes from coverage injuries caused by the act of a third person or fellow employee intended to injure the employee because of personal reasons, and not directed against the employee as an employee, or because of the employment." Minn.Stat. § 176.011, subd. 16 (2002). This is referred to as the assault exception. *McGowan v. Our Savior's Lutheran Church,* 527 N.W.2d 830, 831 (Minn.1995). Cases involving the assault exception usually fall into one of three categories:

(1) those that are noncompensable under the Act because the assailant was motivated by personal animosity toward his victim, arising from circumstances wholly unconnected with the employment; (2) those that are compensable under the Act because the provocation or motivation for the assault arises solely out of the activity of the victim as an employee; and (3) those that are compensable under the Act because they are neither directed against the victim as an employee nor for reasons personal to the employee.

*Id.* at 834.

Meintsma argues that the violent nature of the spanking, the weapon used, and the fact that only a small number of employees received these birthday spankings annually is sufficient to demonstrate that the spanking was personal. Meintsma contends that the spanking was not related to his employment because it had "nothing to do with railroad maintenance." Meintsma also argues that as a matter of public policy Loram should not be able to escape civil liability. Loram argues that the spanking was motivated solely by Meintsma's status as a union employee and there is no evidence that personal animosity was the motivation behind the spanking.

We have narrowly construed the assault exception. *See McGowan,* 527 N.W.2d at 834; *Foley,* 488 N.W.2d at 273; *Bear v. Honeywell, Inc.,* 468 N.W.2d 546, 547–48 (Minn.1991) (stating that because a sexual assault was perpetrated by an unknown assailant whose motive cannot be known "it cannot be said that the injury was inflicted 'because of personal reasons' or was 'directed against the employee as an employee' "). In *McGowan,* a client of a homeless shelter sexually assaulted the director of the shelter in her office. 527 N.W.2d at 832. We held that the assault exception did not apply because McGowan's injuries "resulted from an assault arising solely out of [her] activities as an employee." *Id.* at 834. In reaching that determination, we considered whether McGowan's employment was a "causal factor contributing" to the sexual assault. *Id.* The relevant casual factors were that the assault occurred during working hours in the victim's office while she was performing her duties and that the rapist had no contact with the victim outside of the workplace. *Id.* Based on these facts, we stated that we could not say "the rape arose from circumstances unrelated to McGowan's employment." *Id.* Here, the incident occurred during working hours in the workplace. Meintsma had no meaningful contact with the co-employees outside of the workplace, there is no evidence of personal animosity towards Meintsma, and other employees were spanked in the same manner on their birthdays. Therefore, the assault exception is not applicable because the provocation or motivation for the spanking arose solely out of the activity of Meintsma as an employee and not out of personal animosity. *See id.*

The WCA recognizes an exception to the exclusivity provision for an employer's intentional torts. *Boek v. Wong Hing,* 180 Minn. 470, 471–72, 231

N.W. 233, 233–34 (1930). We first recognized the intentional injury exception in *Boek,* a case in which an employer struck an employee with a broom handle dislocating two finger joints. We stated:

No case has been cited where it has been held that one who willfully assaults and injures a workman while in the course of his employment be he an employee, employer or a stranger, when sued for the tort can successfully interpose as a defense that the plaintiff and his employer are under the Workmen's Compensation Act, and his sole remedy is thereunder. And we think none can be found, for it would be a perversion of the purpose of the act to so hold.

*Id.* at 471, 231 N.W. at 233–34. In order to satisfy the intentional injury exception, the employee must demonstrate that the employer harbored a conscious and deliberate intent to injure him or her. *Gunderson,* 632 N.W.2d at 703; *Kaess v. Armstrong Cork Co.,* 403 N.W.2d 643, 644–45 (Minn.1987); *Hildebrandt v. Whirlpool Corp.,* 364 N.W.2d 394, 397 (Minn.1985); *Breimhorst v. Beckman,* 227 Minn. 409, 425–26, 35 N.W.2d 719, 730 (1949). A conscious and deliberate intent to injure "may not be inferred from mere negligence, though it be gross." *Breimhorst,* 227 Minn. at 426, 35 N.W.2d at 730; *accord Gunderson,* 632 N.W.2d at 703 n. 8. "[A]n employer's knowledge of a 'substantial certainty' of injury to an employee" does not trigger the intentional injury exception. *Gunderson,* 632 N.W.2d at 703 (citing *Hildebrandt,* 364 N.W.2d at 396–97).

Considering the facts in the light most favorable to Meintsma, we conclude that Loram did not harbor a conscious and deliberate intent to inflict Meintsma's injuries. Neither Loram nor its management inflicted the injuries. Even assuming that Loram was aware of and could have prevented Meintsma's spanking, that knowledge and inaction is insufficient to satisfy the intentional injury exception because an employer's knowledge of even a "substantial certainty" of injury to an employee does not demonstrate a conscious and deliberate intent to inflict injury. *Id.* Therefore, because neither the assault nor the intentional injury exceptions apply, Meintsma's sole remedy against Loram is under the WCA.

We now turn to Meintsma's claims against his co-employees. The WCA provides that "[a] coemployee working for the same employer is not liable for a personal injury incurred by another employee unless the injury resulted from the gross negligence of the coemployee or was intentionally inflicted by the coemployee."[3] Minn.Stat. § 176.061, subd. 5(c) (2002). In other words, to maintain a tort action against his co-employees, Meintsma must demonstrate that they either intentionally inflicted the injury or that the injury resulted from gross negligence. *See id.* Meintsma did not allege in the district court or court of appeals that his injuries resulted from his co-employees' gross negligence and, thus, we need not consider that argument here.[4]

---

**3.** In 1979, the Minnesota Workers' Compensation Study Commission recommended the addition of the co-employee exception to the WCA because "it is anomalous to remove tort liability from employers, while retaining it for the simple negligence of co-workers of the injured employee." Minnesota Workers' Compensation Study Commission, *A Report to the Minnesota Legislature and Governor,* 40 (1979); *see also U.S. Specialty Ins. Co. v. James Courtney Law Office, P.A.,* 662 N.W.2d 907, 911 n. 3 (Minn.2003).

**4.** The co-employees also contend that Meintsma waived the argument that they intentionally inflicted the injury by failing to raise this issue in his complaint. This issue of whether the employees intended to injure Meintsma is

In order to determine whether there are sufficient facts to preclude summary judgment under the co-employee exception, we must first define the term "intentionally inflicted" injury as used in the statute. Meintsma contends that he need only show the co-employees intended to commit an act that they should have known would result in some harm. The co-employees argue that the statute requires intent to cause the injury, not just an intent to do the act.

The plain language of section 176.061, subdivision 5(c), suggests that a plaintiff must demonstrate. an intent to cause an injury. The statute provides that a co-employee "is not liable for a personal injury incurred by another employee unless the injury * * * was intentionally inflicted." Minn. Stat § 176.061, subd. 5(c). In other words, a defendant must consciously and deliberately intend to cause an injury, not just intend to do the act. This interpretation is consistent with the requirement under the assault exception that an employer must intend to injure the employee for personal reasons, and the requirement under the intentional injury exception that an employee demonstrate a conscious and deliberate intent to injure. See Minn.Stat. § 176.011, subd. 16; Gunderson, 632 N.W.2d at 703. Additionally, other jurisdictions that except intentional wrongs by co-employees from the exclusivity provisions of their workers' compensation acts generally hold that the "defendant must have entertained a desire to bring about the injurious result and must have believed that the result was substantially certain to follow." 6 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 111.03[6] (2003).

The co-employees and amicus Minnesota Defense Lawyers Association argue that the conduct in this case constituted horseplay, and that injuries sustained during horseplay are accidental as a matter of law. See, e.g., Walsh v. Chas. Olson & Sons, Inc., 285 Minn. 260, 262–63, 172 N.W.2d 745, 747 (1969) (recognizing "that [horseplay] and resulting injuries are incidental to modern-day employment and thus" those injuries are compensable under the WCA). Our review of the record satisfies us that the evidence demonstrates an adequate showing of a deliberate intent to inflict injury. The undisputed facts are that the co-employees grabbed Meintsma from behind, wrestled him off of a stool and onto a concrete floor, held him on the ground, and paddled him with a modified two-by-four. Additionally, the employees were charged with fifth-degree assault and pleaded guilty to disorderly conduct.[5] The nature of the conduct, the implement used, and the reasonable inferences that can be drawn from these factors, considered together with the fact that there was probable cause to charge the employees with an offense that could require intent to inflict bodily harm, is sufficient to create a question of fact concerning whether Meintsma's co-employees intended to injure him at the time of the spanking. Therefore, the co-employee exception does not preclude Meintsma's action for damages at this stage of the case. Whether the employees intended to injure Meintsma is a question for the finder of fact to decide.

properly before us because the issue was addressed by the district court and the issue of the exclusivity of the WCA first arose because the employees raised it as an affirmative defense.

5. The elements of fifth-degree assault consist of either committing an act with intent to cause fear of immediate bodily harm or death or intentionally inflicting or attempting to inflict bodily harm on another. Minn.Stat. § 609.224, subd. 1 (2002).

Affirmed in part, reversed in part, and remanded.