*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0360**

Lawrence Leasing, Inc.,
d/b/a Lawrence Transportation Services,
Respondent,

vs.

Northwoods Pallets, LLC, et al.,
Appellants

**Filed March 21, 2016
Reversed in part, affirmed in part, and remanded
Worke, Judge**

Goodhue County District Court
File No. 25-CV-13-2817

Andrew A. Green, William G. Cottrell, Cottrell Law Firm, P.A., Mendota Heights, Minnesota (for respondent)

Jason W. Martell, Raihle Law Office, S.C., Chippewa Falls, Wisconsin (for appellant)

Considered and decided by Kirk, Presiding Judge; Peterson, Judge; and Worke, Judge.

# UNPUBLISHED OPINION

**WORKE**, Judge

Appellants argue that the district court abused its discretion in piercing the corporate veil and that the district court's factual findings are clearly erroneous. We reverse in part, affirm in part, and remand.

**FACTS**

In February 2007, Thomas Swoboda started Buckboard Logistics and Transportation, Inc. Buckboard, a trucking company, leased trucks from respondent Lawrence Leasing, Inc. Swoboda initially owned 60 percent of Buckboard, and his wife owned 40 percent. In January 2011, Swoboda's wife transferred her interest to Swoboda. Swoboda and Buckboard became indebted to Lawrence and fell behind on payments. Swoboda personally guaranteed Buckboard's debt.

In February 2009, Lawrence sent Jason Krell, a certified public accountant, to Buckboard. Krell had a difficult time interpreting Buckboard's records because they were poorly maintained. Krell spoke to Swoboda's business advisor to discuss repayment options. Krell concluded that the advisor did not understand how much money Buckboard owed Lawrence. In April 2012, the IRS shut down Buckboard for failing to withhold employee taxes.

In June 2013, Lawrence deposed Swoboda and suspected that he transferred assets from Buckboard to appellant Northwoods Pallets, LLC. Swoboda formed Northwoods in January 2009. Swoboda loaned money from Buckboard to start Northwoods. Prior to January 2011, Swoboda owned 49 percent of Northwoods, and his wife owned 51 percent. Swoboda's wife did not participate in the day-to-day business of Northwoods. Swoboda currently owns 95 percent of Northwoods.

In August 2013, Lawrence obtained a judgment against Swoboda personally and against Buckboard for $311,962.57, but Lawrence recovered only approximately $2,800. Lawrence filed a summons and complaint against Northwoods claiming that Northwoods

was the "alter ego" of Buckboard and that Swoboda and Buckboard fraudulently transferred assets to Northwoods.

Lawrence deposed Swoboda again in May 2014 and suspected that Buckboard transferred assets to another entity, appellant NWP Logistics, LLC. NWP was created in September 2013. Swoboda's sons own NWP, and Swoboda previously worked for NWP. Lawrence amended its complaint to add NWP as a defendant. Lawrence claimed that Buckboard made fraudulent transfers to NWP and that NWP was the "alter ego" of Buckboard.

At trial, Swoboda testified that Buckboard did not pay Lawrence because the IRS levied its accounts. Swoboda testified that Buckboard, Northwoods, and NWP used the same address, phone number, office equipment, and bookkeeper. Swoboda stated that Buckboard transferred money to start Northwoods, but the companies never used loan agreements or promissory notes. Swoboda also stated that Buckboard did not transfer tangible assets to NWP and that Northwoods repaid its loans from Buckboard. Swoboda stated that Northwoods does not have a lot of equipment or assets and that NWP's only asset is a 2004 tractor with 700,000 miles. Swoboda denied hiding assets in Northwoods and NWP. Lawrence introduced evidence establishing that Buckboard deposited checks after being shut down. Swoboda could not confirm or deny whether Buckboard used that money to pay Lawrence. The documents also established that Swoboda wrote checks, as the president of NWP, to pay Northwoods and himself.

The district court pierced the corporate veil and held Northwoods and NWP liable to Lawrence for the original judgment. Although the district court did not rule on

3

Lawrence's fraudulent-transfer claims, the district court specifically found that the transfers from Buckboard and Swoboda to Northwoods, and ultimately to NWP, were made with actual intent to delay creditors. This appeal follows.

## D E C I S I O N

### *Piercing the corporate veil*

Northwoods and NWP argue that the district court abused its discretion by piercing the corporate veil. Veil piercing constitutes an equitable remedy that may be applied to avoid an injustice that would otherwise occur. *Equity Tr. Co. Custodian ex rel. Eisenmenger IRA v. Cole*, 766 N.W.2d 334, 339 (Minn. App. 2009). "Granting equitable relief is within the sound discretion of the [district] court. Only a clear abuse of that discretion will result in reversal." *Nadeau v. Cty. of Ramsey*, 277 N.W.2d 520, 524 (Minn. 1979). A district court abuses its discretion when "its decision is against the facts in the record" or when its ruling is based on an erroneous view of the law. *City of N. Oaks v. Sarpal*, 797 N.W.2d 18, 24 (Minn. 2011).

A district court may "pierce the corporate veil" and hold a shareholder personally liable for a corporation's debts when there is fraud or when the shareholder is the "alter ego" of the corporation. *Gunderson v. Harrington*, 632 N.W.2d 695, 705 (Minn. 2001); *see Whitney v. Leighton*, 225 Minn. 1, 8, 30 N.W.2d 329, 333 (1947) ("We recognize the rule that [when] a corporation is used as an instrument of fraud the corporate entity will be disregarded and the *responsible persons* held financially responsible." (emphasis added)).

4

"Reverse piercing" occurs when corporate form is disregarded for the benefit of a corporation's shareholders. *See Cargill, Inc. v. Hedge*, 375 N.W.2d 477, 480 (Minn. 1985) (disregarding corporate form to allow shareholders to claim a homestead exemption); *Roepke v. W. Nat'l Mut. Ins. Co.*, 302 N.W.2d 350, 352 (Minn. 1981) (describing a "reverse pierce" as "an insider (or someone claiming through him) attempting to pierce the corporate veil from within the corporation"). These principles also apply to limited liability companies. Minn. Stat. § 322B.303, subd. 2 (2014).

Traditional piercing principles do not apply here. The district court pierced the corporate veil, holding that Northwoods and NWP were the alter egos of Swoboda and liable for the original judgment. But the district court did not hold a *shareholder* liable, it held two LLCs liable. *See Gunderson*, 632 N.W.2d at 705 (stating that a court may pierce the corporate veil to hold a shareholder liable for a corporation's debts). Reverse piercing is also inapplicable because Lawrence, a corporation independent from Northwoods and NWP, attempts to disregard corporate formalities for its benefit. *See Cargill*, 375 N.W.2d at 480.

Here, the district court utilized "outside reverse piercing." Outside reverse piercing occurs when "a third party outsider seeks to reach corporate assets to satisfy claims against an individual shareholder." *Postal Instant Press, Inc. v. Kaswa Corp.*, 77 Cal. Rptr. 3d 96, 101 (Cal. Ct. App. 2008), *review denied* (Cal. Aug. 27, 2008); *see also Acree v. McMahan*, 585 S.E.2d 873, 882 (Ga. 2003). Minnesota has not adopted outside reverse piercing. Therefore, the district court abused its discretion by piercing the

corporate veil because its ruling is based on an erroneous view of the law. *City of N. Oaks*, 797 N.W.2d at 24.

***Fraudulent transfer***

We may still uphold the district court's decision. Typically, this court "will not reverse a proper decision simply because the [district] court did not rely on the strongest reasons." *Carousel Autos., Inc. v. Gherity*, 511 N.W.2d 472, 476 n.2 (Minn. App. 1994) (citing *Katz v. Katz*, 408 N.W.2d 835, 839 (Minn. 1987)), *aff'd* 527 N.W.2d 813 (Minn. 1995); *see Jerry Mathison Constr., Inc. v. Binsfield*, 615 N.W.2d 378, 381 (Minn. App. 2000) (stating that deciding the case on a different basis was appropriate despite counsel's failure to brief the theory on appeal), *review denied* (Minn. Oct. 25, 2000).

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay, or defraud any creditor of the debtor.

Minn. Stat. § 513.44(a)(1) (2014). To determine whether someone acted with "actual intent," courts may consider, among other factors, whether "the debtor retained possession or control of the property transferred after the transfer." *Id.* (b)(2) (2014).

"In an action for relief against a transfer or obligation under sections 513.41 to 513.51, a creditor . . . may obtain . . . avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim." Minn. Stat. § 513.47(a)(1) (2014). The creditor may recover from the original or subsequent transferee the value of the asset

6

transferred "or the amount necessary to satisfy the creditor's claim, *whichever is less.*" Minn. Stat. § 513.48(b)(1), (2) (2014) (emphasis added).

Here, the district court found that Swoboda and Buckboard fraudulently transferred money to Northwoods because the transfer was made with the actual intent to delay creditors. Despite being indebted to Lawrence, Buckboard transferred money to start Northwoods. Swoboda was an owner of Buckboard and Northwoods and had the ability to control both companies. Thus, the transfer from Buckboard to Northwoods involved "actual intent" to defraud.

Northwoods also transferred assets to NWP. Thus, Lawrence could recover damages from Northwoods—the original transferee—and NWP—a subsequent transferee—for the value of the assets transferred or the amount necessary to satisfy its claim, whichever is less. We therefore remand to the district court for further proceedings.

*Factual findings*

Northwoods and NWP argue that the district court's factual findings are clearly erroneous. "Findings of fact . . . shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the [district] court to judge the credibility of the witnesses." Minn. R. Civ. P. 52.01. A finding is clearly erroneous if it "is palpably and manifestly against the weight of the evidence." *Kral v. Boesch*, 557 N.W.2d 597, 598 (Minn. App. 1996). This court views the evidence "in the light most favorable to the verdict." *Rasmussen v. Two Harbors Fish Co.*, 832 N.W.2d 790, 797 (Minn. 2013). If reasonable evidence supports the district court's factual findings, "a reviewing court

7

should not disturb those findings." *Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 101 (Minn. 1999).

Northwoods and NWP argue that the district court clearly erred in finding that, instead of paying the original judgment, Swoboda transferred income and assets from himself and Buckboard to Northwoods and NWP without valid consideration, at a time when both were insolvent. This argument is persuasive. Lawrence did not introduce evidence indicating that Swoboda or Buckboard transferred assets to Northwoods or NWP *after* receiving the original judgment.

Lawrence argues that the capital used to start Northwoods came from Buckboard, and that the capital used to start NWP came from Northwoods, thus establishing that Swoboda transferred income and assets from himself and Buckboard. This argument is unpersuasive because, despite the source of capital, nothing indicates that Swoboda or Buckboard transferred money to Northwoods or NWP after the initial judgment. Therefore, the district court's finding is clearly erroneous.

Northwoods and NWP make a similar argument, stating that the district court clearly erred in finding that Swoboda attempted to shield assets to keep the businesses running by avoiding the original judgment owed to Lawrence, while at the same time transferring assets from himself and Buckboard to Northwoods and then to NWP. But this argument mischaracterizes the district court's finding.

The district court first found that Swoboda attempted to shield assets and keep the businesses running by avoiding the original judgment owed to Lawrence. Lawrence established that Buckboard deposited a check for $4,252.75 on November 4, 2013, over

8

two months after the original judgment. Krell testified that Lawrence has recovered only approximately $2,800 from one of Swoboda's bank accounts. Swoboda used assets from Buckboard to fund Northwoods and, after the original judgment was entered, he used funds from Northwoods to start NWP. Thus, viewed in a light most favorable to the decision, the record supports the district court's finding.

The district court next found that Swoboda promised to make payments to Lawrence which were never made, while at the same time transferring assets from himself and Buckboard to Northwoods and then to NWP. Krell testified that by 2008, Buckboard had accumulated $50,000 in past-due obligations. Swoboda promised to pay the debt, but Lawrence received only approximately $2,800. Swoboda also transferred money from Buckboard to start Northwoods in 2009 and transfered money from Northwoods to start NWP in 2013. Thus, viewed in a light most favorable to the decision, the record supports the district court's finding.

Northwoods and NWP finally argue that the district court erred by finding that the transfers from Buckboard and Swoboda to Northwoods, and eventually to NWP, were with actual intent to delay creditors. "Actual intent" may be present when a debtor retains possession or control of the property transferred. Minn. Stat. § 513.44(b)(2).

Here, Krell went to Buckboard in February 2009 because Buckboard was behind on its payments to Lawrence. Swoboda transferred money from Buckboard to Northwoods in January 2009. Swoboda partially owned both companies and was involved in the day-to-day activities. Swoboda also transferred money from Northwoods to NWP in September 2013, which is after Lawrence obtained the original judgment

9

against Swoboda and Buckboard. Swoboda worked for NWP and wrote checks on behalf of NWP. Swoboda also identified himself as the president of NWP. Thus, viewed in a light most favorable to the decision, the record supports the district court's finding.

We therefore reverse the district court's decision to pierce the corporate veil because it abused its discretion by applying an erroneous view of the law. Additionally, we affirm the district court's conclusion that the transfers to Northwoods and NWP were made with actual intent to delay creditors and remand for a determination of damages.

**Reversed in part, affirmed in part, and remanded.**