Daniel W. **KARST**, Respondent,

v.

**F.C. HAYER CO., INC.,**
Petitioner, Appellant.

No. CX–88–1044.

Supreme Court of Minnesota.

Nov. 3, 1989.

Paul L. Landry, Fredrikson & Byron, Minneapolis, for appellant.

Gary T. LaFleur, Randall J. Fuller, Babcock, Locher, Neilson & Mannella, Anoka, for respondent.

## OPINION

YETKA, Justice.

Appellant, F.C. Hayer Co., Inc. (hereinafter "Hayer"), has petitioned this court for review of a decision by the Minnesota Court of Appeals holding that the exclusive remedy provision of the Workers' Compensation Act does not bar the same employee awarded workers' compensation benefits from bringing a disability action under the Minnesota Human Rights Act on the grounds that his employer has refused to rehire him. 429 N.W.2d 318 (Minn.App. 1988) We reverse the court of appeals and hold that the action under the Human Rights Act is barred by the exclusive remedy provision of the Workers' Compensation Act.

Respondent, Daniel W. Karst, initiated this action for damages at the trial court under the Minnesota Human Rights Act (MHRA), Minn.Stat. § 363.01–.15 (1988), against F.C. Hayer Co., Inc. after Hayer refused to rehire Karst following treatment for a work-related injury. The Hennepin County District Court granted Hayer's motion for summary judgment on the grounds that the exclusive remedy provision of the Workers' Compensation Act (WCA), Minn.Stat. § 176.001–.85 (1988), bars such an action by an injured worker against his former employer. The trial court also concluded that Karst had failed to establish a prima facie case of disability discrimination.

Karst appealed to the Minnesota Court of Appeals, which reversed the trial court's conclusion that the exclusive remedy provision of the WCA operates to bar a discrimination action. In reversing the trial court, the court of appeals concluded that a discriminatory refusal to rehire causes an employee injuries separate from an earlier physical injury compensable under the WCA and, therefore, constitutes a separate "factual basis" for a discrimination action. Moreover, the court of appeals concluded that summary judgment was improper because genuine issues of material fact exist as to whether Karst established the elements of a prima facie case for disability discrimination under the MHRA.

Appellant Hayer petitioned for review of the court of appeals' decision that the exclusive remedy provision of the Workers' Compensation Act does not bar a disability discrimination action.[1]

■ The only issue presented to this court is whether the exclusive remedy provision of the Workers' Compensation Act precludes an action by a disabled individual against his former employer for disability discrimination under the Minnesota Human Rights Act where the individual becomes disabled as a result of work-related injuries and the former employer refuses to rehire the individual because of the disability. The issue presented is a pure issue of law; therefore, this court is not bound by the decision of the lower court. *See A.J. Chromy Constr. Co. v. Commercial Mechani-*

---

1. Accordingly, the issues concerning whether Karst is a "qualified disabled person" and whether he established a prima facie case of disability discrimination are technically not before the court.

*cal Serv., Inc.*, 260 N.W.2d 579, 582 (Minn. 1977).

The following summary of the facts has been prepared from the affidavits, depositions, and exhibits presented by the parties to the trial court and from the appendices to the briefs submitted to the court of appeals and this court. Because the trial court granted Hayer's motion for summary judgment, there is no trial transcript. In addition, because the trial court's grant of summary judgment was reversed by the court of appeals on the grounds that genuine issues of material fact exist as to whether Karst established a prima facie case of disability discrimination, the trial court's findings of fact are not conclusive. Accordingly, some of these "facts" are, to a certain extent, still being contested by the parties.

Daniel W. Karst, presently age 55, was employed as a warehouseman by Hayer from February 9, 1953, until July of 1984. F.C. Hayer Co. is a wholesale distributer of household appliances. In December of 1978, Karst suffered a work-related injury to his left shoulder that rendered him unable to work. As a result of this injury, it was determined that, for purposes of workers' compensation, Karst had a 5% permanent partial disability. Karst returned to work in June of 1980. Despite his partial disability, Karst was able to perform his warehouseman duties satisfactorily from June 1980 to July 27, 1984. The parties have sharply differing views as to whether Hayer made any accommodations during this period in order to enable Karst to perform his duties or whether Hayer has ever accommodated other disabled workers. Karst alleges that, since 1980, when he had to remove the refrigerator boxes from the refrigerators by lifting the boxes over his head, his co-workers routinely assisted him. Karst contends that Hayer previously accommodated other injured workers. Moreover, Karst contends that because he is right-handed, he does not need the full use of his left arm in order to perform all the essential functions of his former job.

In July of 1984, Karst suffered a second work-related injury to his left shoulder that rendered him unable to work. Karst's treating physician, Dr. Haley, an orthopedic surgeon, diagnosed the second injury as a left rotator cuff tendonitis with adhesive capsulitis and impingement syndrome. This injury is characterized by chronic inflammation of the shoulder muscles, pain, and loss of range of motion. Soon thereafter, Karst applied for and began receiving workers' compensation benefits, including medical benefits, temporary total compensation, and the services of a qualified rehabilitation specialist. According to Hayer's counsel, Karst continues to receive temporary partial compensation benefits of Three Hundred Seventy-one and 23/100 Dollars ($371.23) per week and has received total benefits in excess of Two Hundred Twenty Thousand and No/100 Dollars ($220,000.00).

In April of 1985, Hayer's workers' compensation insurer referred Karst's case to Carol T. Mossey, who is a qualified rehabilitation consultant (QRC) and a registered nurse. In April and May of 1985, Mossey met with Karst, Dr. Haley, and managers from Hayer and also visited Hayer's warehouse. According to Mossey, both she and Dr. Haley felt that Karst could do any of the warehouseman's duties except tip refrigerators onto a "two-wheeler" (also commonly known as an "appliance dolly") and lift empty refrigerator boxes over his head. In May of 1985, Karst's treating physician released him to return to work subject to certain restrictions. These restrictions included weight-lifting limitations on his left shoulder from the ground up to shoulder level and a complete prohibition on lifting anything with the left arm above the shoulder level.

In July or August of 1985, Karst, at his own initiative, asked Hayer if he could return to his position as warehouseman or to a modified position. Hayer management employees told him that he could return only if his doctor removed all restrictions.

On September 7, 1985, Dr. Haley concluded that Karst had reached "maximum medical improvement." Dr. Haley deter-

mined that Karst had an additional 3% permanent partial disability as a result of his second shoulder injury. At this time, it was Dr. Haley's opinion that it would be in Karst's best interest to return to his old job, but only if he was allowed to work within his restrictions. This opinion was shared by Mossey and the insurance company's claims examiner.

Also, in September of 1985, Mossey contacted Hayer and requested a meeting in order to discuss whether accommodations could be made to the warehouseman position that would enable Karst to return to work. Hayer flatly refused to discuss any accommodations.

Between October and December of 1985, Hayer's workers' compensation insurer attempted to persuade Hayer to rehire Karst. On November 27, 1985, Karst's attorney filed a request for an administrative conference in an attempt to resolve the impasse regarding Hayer's refusal to discuss rehiring Karst. A conference was held on January 27, 1986. According to the Rehabilitation Decision and Order, Mr. Sherry, Hayer's operations manager, stated during the conference that it had always been their policy and will continue to be their policy not to return employees to work until they no longer had restrictions.

After Hayer's formal refusal to rehire him, Karst, with the assistance of his QRC, diligently sought other employment, including 54 employer contacts or visits during May 1987. Because Karst's prospects for employment were limited by his poor reading ability, Karst, in connection with his rehabilitation program, began attending tutoring sessions in order to improve his reading skills.

Since spring of 1986, Karst has worked part-time at his son's transmission shop disassembling automobile transmissions. Throughout the course of his treatment and rehabilitation, Karst has cooperated with his doctor, his QRC, and his tutor. Karst has repeatedly stated that he wants to work and believes he can do the job if given the opportunity.

On April 22, 1986, Karst sued Hayer for disability discrimination, seeking compensatory damages for wage loss, damages for mental anguish and suffering, punitive damages, and attorney fees. In connection with this lawsuit, Frank J. Lamp, Ph.D, also a QRC, conducted a vocational evaluation of Karst. Dr. Lamp testified that, as part of his vocational evaluation, he evaluated Karst's emotional reaction to his job loss. With respect to Karst's emotional situation, Dr. Lamp reported:

> Mr. Karst presents himself as an individual who is experiencing considerable stress related to his loss of income, concern for his ability to support his family, and monetary loss in terms of pension and retirement from his inability to work at his pre-injury job.

> Mr. Karst appears to be an individual who is very determined to re-enter the work-force [sic] with his primary interest as a return to F.C. Hayer Company. If he is unable to do so, he indicates that he will try any job he is able to perform. He feels that his employer has not treated him fairly after 31 years of employment which is bothering him considerably in terms of his investment with this company.

With these facts as background, we turn to an analysis of the statutes involved.

■ The exclusive remedy provision of the Minnesota Workers' Compensation Act appears in Minn.Stat. § 176.031 (1988). It provides in pertinent part as follows:

> The liability of an employer by this chapter is exclusive and in place of any other liability to such employee, personal representative, surviving spouse, parent, any child, dependent, next of kin, or other person entitled to recover damages on account of such injury or death.

The current version of the exclusivity provision in the Workers' Compensation Act was enacted in 1953. Act of April 24, 1953, ch. 755, § 3, 1953 Minn. Laws 1099, 1103–04. It has been a part of workers' compensation law in Minnesota since its inception in 1913. *See* Act of April 24, 1913, ch. 467, § 10, 1913 Minn.Laws 675, 677–78. The exclusive remedy provision is part of the *quid pro quo* of the workers' compensation scheme in which the employer assumes lia-

bility for work-related injuries without fault in exchange for being relieved of liability for certain kinds of actions and the prospect of large damage verdicts. *See* 2A A. Larson, *Workmen's Compensation Law,* § 65.11 (1988). As a general rule, where an injury does not fall within the Workers' Compensation Act, the remedy is not affected by that act. *Rosenfield v. Matthews,* 201 Minn. 113, 115, 275 N.W. 698, 699 (1937); Larson, *supra,* at § 65.00.

In *Kaluza v. Home Insurance Co.,* 403 N.W.2d 230 (Minn.1987), this court stated that the "employer's liability under the workers' compensation act is exclusive only if it is prescribed by the act; that is, if the injury or damages arose out of or in the course of employment." *Id.* at 235 (citing Minn.Stat. §§ 176.021, 176.031 (1984)). In *Kaluza,* this court concluded that injuries resulting from intentional misrepresentation and abuse of process by an insurer did not arise out of and in the course of employment and, therefore, were not within the Workers' Compensation Act. *Id.* at 236.

Accordingly, the question at bar becomes: Are injuries resulting from disability discrimination within the coverage of the Minnesota Workers' Compensation Act? Stated differently, the question is: Does the Minnesota Workers' Compensation Act provide a remedy for disability discrimination?

■ Karst contends, and the court of appeals agreed, that the injuries resulting from Hayer's allegedly discriminatory refusal to rehire him were separate and distinct from his former employment at Hayer. The court of appeals reasoned that this separate "factual basis" entitled Karst to bring a separate action for disability discrimination. We disagree. Although the injuries suffered by Karst as a result of Hayer's refusal to rehire him may be conceptually distinct from his work-related injuries, any difference is immaterial. The exact nature and cause of these injuries is not the issue in this case. The issue is whether the WCA provides a remedy for these injuries.

Hayer argues that the WCA provides a remedy for discriminatory refusals to re-hire by requiring employers to pay additional benefits if they do not rehire an injured worker. This argument is based on various subdivisions of Minn.Stat. § 176.101 (1988). Section 176.101, subdivision 3e(b) provides that if the employer gives the employee a suitable job offer, temporary total compensation benefits shall cease and the employee shall, if appropriate, receive impairment compensation pursuant to section 176.101, subdivision 3b. Section 176.101, subdivision 3p provides that an employee shall receive economic recovery compensation pursuant to subdivision 3a if no suitable job offer is made. Section 176.101, subdivision 3t provides that economic recovery compensation shall be at least 120% of the impairment compensation. In the present case, Karst had an average weekly wage of Five Hundred Two and 08/100 Dollars ($502.08) at the time of injury. The applicable statewide average weekly wage at the time of Karst's injury was Three Hundred Thirteen and No/100 Dollars ($313.00). Accordingly, Karst's economic recovery compensation benefits are subject to the maximum amount of the statewide average weekly wage. *See* Minn.Stat. § 176.101, subd. 3a. Karst has a 3% permanent partial disability.

Based on these numbers, counsel for Karst alleges that the job offer/no job offer differential would only amount to between $3,000–$4,000 and that this is hardly an amount to deter an employer from refusing to rehire Karst. This is a compelling argument. It is, however, an argument which should be directed to the legislature and not to this court. It may be that the job offer/no job offer differential is an inadequate remedy for disability discrimination in some cases. Nevertheless, it is clear evidence that the legislature intended the decision of whether or not to rehire an injured worker and the consequences flowing from that decision to be within the scope of the WCA.

This court has historically held that, where the Workers' Compensation Act applies, it is exclusive of all other remedies. *Danek v. Meldrum Mfg. & Eng'g Co., Inc.,* 312 Minn. 404, 413–14, 252 N.W.2d 255

(1977); *Frank v. Anderson Bros.*, 236 Minn. 81, 85, 51 N.W.2d 805, 808 (1952); *Breimhorst v. Beckman,* 227 Minn. 409, 434–35, 35 N.W.2d 719, 732 (1949). In addition, where a party who may have multiple remedies elects to recover workers' compensation benefits, we have held that this election bars recovery under other theories. *See, e.g., Peterson v. Kludt,* 317 N.W.2d 43, 48 (Minn.1982). In *Peterson,* an employee who was injured in a work-related traffic accident attempted, after receiving workers' compensation benefits, to bring a common law action against the estate of a co-employee involved in the accident. *Id.* at 46. In concluding that the election-of-remedies provision of the Workers' Compensation Act barred such an action, we recognized the importance of preserving the basic trade-offs embodied in the Workers' Compensation Act. *Id.* at 48. Finally, although there are certain narrow exceptions to the exclusivity provision, this court has been consistently unwilling to extend these exceptions without a clear manifestation of legislative intent to do so. *See Bergeson v. U.S. Fidelity and Guar. Co.,* 414 N.W.2d 724, 726–27 (Minn.1987); *Hildebrandt v. Whirlpool Corp.,* 364 N.W.2d 394, 397 (Minn.1985); *Breimhorst,* 227 Minn. at 429, 35 N.W.2d at 732.

The Minnesota Human Rights Act was first enacted in 1955. Act of April 19, 1955, ch. 516, 1955 Minn.Laws 802, 802–12. Minn.Stat. § 363.12, subd. 1 (1988) sets forth the legislature's declaration of policy and provides in pertinent part as follows:

> It is the policy of this state to secure for persons in this state, freedom from discrimination; (1) In employment because of * * * disability * * *.

The MHRA authorizes damage awards, including treble damages, punitive damages, damages for mental anguish, and attorney fees to an aggrieved party who has suffered discrimination. The purpose of the civil damage remedy afforded a discrimination victim under the MHRA is to restore the person, as nearly as possible, to the same position the person would have been in if there had been no discrimination. *Anderson v. Hunter, Keith, Marshall & Co.,* 417 N.W.2d 619, 627 (Minn.1988).

Minn.Stat. § 363.03 (1988) sets forth employment practices prohibited by the MHRA and is the basis for Karst's disability discrimination action. Section 363.03, subdivision 1 provides in pertinent part as follows:

> Except when based on a bona fide occupational qualification, it is an unfair employment practice:
>
> * * * * * *
>
> (6) For an employer with 50 or more permanent, full-time employees * * * not to make reasonable accommodation to the known disability of *a qualified disabled person or job applicant* unless the employer * * * can demonstrate that the accommodation would impose an undue hardship on the business * * *.

(Emphasis added.) Section 363.03, subdivision 1(6) was enacted in 1983, the same year the WCA was overhauled. Act of June 6, 1983, ch. 276, § 7, 1983 Minn.Laws 1181, 1184–86. The definition of "qualified disabled person" is set forth in section 363.-01, subdivision 25a. Although the definition of "qualified disabled person" excludes certain people disabled as a result of alcohol or drug abuse, it does not exclude people disabled as a result of work-related physical injuries. *Id.* Moreover, the phrase "qualified disabled person *or* job applicant" in Minn.Stat. § 363.03, subd. 1(6) could be construed to include existing employees and employees who became disabled while employed, as well as job applicants, within the coverage of the MHRA. The available legislative history, however, indicates that the legislature did not discuss or analyze the likely impact of Minn. Stat. § 363.03, subd. 1(6) on the WCA. Our review of this legislative history convinces us that the legislature did not intend to authorize virtually every injured worker who is not rehired to bring a disability discrimination action. *Cf. State by Cooper v. Hennepin County,* 441 N.W.2d 106, 113 (Minn.1989) (declining to expand the definition of the phrase "disabled person" to cover an unusual disability discrimination case).

Minn.Stat. § 363.11 (1988) provides that, "as to acts declared unfair by [the MHRA], *the procedure herein provided shall, while pending, be exclusive."* (Emphasis added.) This provision conflicts with the exclusivity provision of Minn.Stat. § 176.031 (1988). When the provisions of two statutes enacted by different legislatures are irreconcilable, the statute latest in date of final enactment shall prevail. Minn.Stat. § 645.26, subd. 4 (1988). The exclusivity provision of the MHRA was enacted in 1955. Act of April 19, 1955, ch. 516, § 13, 1955 Minn.Laws 802, 812. The current exclusivity provision of the WCA was enacted in 1953. Act of April 24, 1953, ch. 755, § 3, 1953 Minn.Laws 1099, 1103–04. Normally, unless these two statutory schemes can be reconciled, Minn.Stat. § 363.-11 (1988) would be construed so as to prevail over Minn.Stat. § 176.031 (1988). However, both of these chapters were substantially amended in the same 1983 legislative session so this rule of construction offers little guidance in this case.

It is important to note that Karst has not been without a remedy. He has already collected nearly a quarter of a million dollars and is seeking additional compensation. If the employer has acted in bad faith, the workers' compensation statute provides for further penalties, but an employer must have some discretion in deciding whether to rehire an injured employee. Here, after Karst's first injury in 1980, he was rehired and worked nearly 4 years before the second injury. That second injury aggravated his permanent disability. If he were rehired a second time, it is at least reasonable to assume that he could be injured again, perhaps even more severely. In a situation such as this, imposing liability under the Human Rights Act in addition to the remedies provided in the Workers' Compensation Act will add a tremendous financial burden on employers. Defending these suits is burdensome enough. Together with potential damage awards, this dual liability will fundamentally change the workers' compensation system. Such a dramatic change in employer liability should be made, if necessary, by the legislature following hearings and legislative debate.

Wisconsin has held that their Workers' Compensation Act precludes a separate suit for disability discrimination as well. However, the Wisconsin statute specifically provides for an additional penalty in the event that an employer refuses to rehire an injured employee. That statute, Wis.Stat. § 102.35(3) (1983), provides:

> (3) Any employer who without reasonable cause refuses to rehire an employe who is injured in the course of employment, where suitable employment is available within the employe's physical and mental limitations, upon the order of the department and in addition to other benefits, has exclusive liability to pay to the employe the wages lost during the period of such refusal, not exceeding one year's wages.

Because of the above provision, Wisconsin's courts have concluded that the workers' compensation statute provides injured employees with their exclusive remedy for wrongful refusal to rehire. *Schachtner v. Dept. of Industry, Labor, and Human Relations*, 144 Wis.2d 1, 422 N.W.2d 906 (Ct.App.1988) (worker's compensation law precludes handicap discrimination action); *Cornejo v. Polycon Indus., Inc.*, 109 Wis.2d 649, 327 N.W.2d 183 (Ct.App.1982) (worker's compensation act precludes action for tortious refusal to rehire). The *Schachtner* court reasoned that the worker's compensation act barred the handicap discrimination action because the act provided a remedy for an employer's refusal to rehire. *See Schachtner*, 144 Wis.2d at 7–8, 422 N.W.2d at 909. We find the reasoning of the *Schachtner* court to be persuasive.

Thus, in light of the vital importance of the exclusivity provision to the workers' compensation system and in the absence of a clear legislative intent to impose the liability of the Human Rights Act in addition to that under the Workers' Compensation Act, we decline to interpret the Human Rights Act as applicable here. If we have incorrectly defined the legislative intent, the legislature may quickly correct us.

Accordingly, we reverse the court of appeals and remand to the trial court for reinstatement of the trial court's summary judgment.