Shannon GILBERTSON, Respondent,

v.

WILLIAMS DINGMANN, LLC, United
Fire & Casualty Group, Relators,

and

PAR, Inc., Blue Cross/Blue Shield
of Minnesota, Intervenors.

A16-0895

Supreme Court of Minnesota.

Filed: May 3, 2017

Aaron W. Ferguson, Aaron Ferguson Law, Saint Paul, Minnesota, for respondent.

Susan K.H. Conley, Richard C. Nelson, Sarah E. Bushnell, Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis, Minnesota, for relators.

## OPINION

HUDSON, Justice.

Relators Williams Dingmann, LLC, and United Fire & Casualty Group appeal from a decision of the Workers' Compensation Court of Appeals (WCCA) that reversed the compensation judge's decision to discontinue temporary total disability compensation. At issue is whether, under Minn. Stat. § 176.101, subd. 1(i) (2016), an offer to return to work with the same employer is "consistent with" a plan of rehabilitation stating that the employee's vocational goal is to return to work with a different employer in the same industry. Based on the plain language of Minn. Stat. § 176.101, subd. 1(i), we affirm.

## FACTS

Respondent Shannon Gilbertson, a licensed mortician, worked for Williams Dingmann, LLC (Dingmann), as a funeral director for over 7 years. Gilbertson's responsibilities included transporting bodies from the location of death or receiving bodies at the funeral home; embalming, dressing, and applying cosmetics to bodies; placing bodies in caskets; and coordinating funeral services and visitations. Gilbertson generally worked Monday through Friday from 9 a.m. to 5 p.m., and also was on-call outside of this schedule when needed to transport a body from the place of death.

In 2011, Gilbertson's on-call schedule began to conflict with her family obligations due to the age of her children and her spouse's work commitments. Gilbertson discussed her concerns with Dingmann and understood that Dingmann would adjust her on-call schedule to accommodate her family obligations. Later, when Gilbertson learned that Dingmann could no longer accommodate her request to modify her on-call schedule, she submitted a letter of resignation on September 26, 2011, which was effective December 31, 2011.

On October 13, 2011, Gilbertson suffered a low back injury at work. Dingmann accepted responsibility for the injury and compensated Gilbertson for all reasonably necessary medical expenses incurred in connection with that injury. Gilbertson's last day of work with Dingmann was October 13, 2011.

By April 2012, Gilbertson's treating physician had released her to work with moderate restrictions. Around the same time, Gilbertson met with a qualified rehabilitation consultant (QRC). Based on discussions with Gilbertson, the QRC completed an R-2 Rehabilitation Plan that identified Gilbertson's vocational goals and rehabilitation services. See Minn. R. 5220.0410, subp. 1 (2015) ("The purpose of the reha-

bilitation plan is to communicate to all interested parties the vocational goal, the rehabilitation services, and the projected amounts of time and money that will be needed to achieve the vocational goal."). The QRC had two options for Gilbertson's vocational goal: "[return to work] same employer" or "[return to work] different employer."[1] Gilbertson's QRC checked the option for "[return to work] different employer" as the vocational goal, and added in the "QRC Comments": "Ms. Gilbertson would like to return to her same industry and different employer." As required by Minn. R. 5220.0410, subp. 3 (2015), the QRC provided the proposed Rehabilitation Plan to Gilbertson and Dingmann. Ultimately, Dingmann's insurer's representative, the QRC, and Gilbertson each signed the Plan "signifying [their] agreement." Minn. R. 5220.0410, subp. 4(A) (2015).

On June 18, 2012, Dingmann offered Gilbertson a funeral-director position that became available due to the departure of another director. The position was "at the same compensation and work schedule" as her prior position with Dingmann. Dingmann also agreed to "make all reasonable accommodations until [Gilbertson's] restrictions have been removed," but made no proposal to accommodate Gilbertson's family situation—the issue that had prompted her resignation.[2]

On June 22, 2012, Gilbertson asked her QRC, via e-mail, whether her benefits would be affected if she declined Dingmann's job offer. The QRC, who had not seen a copy of the offer or learned the job specifics, responded: "Great, question. I don't think you[r] benefits should be affected, as you indicated to your company that you would be retiring in December, which was stated prior to your injury. Also—you are under restrictions and if they can accommodate them, you can go back." After receiving this response, Gilbertson declined Dingmann's job offer.

On July 3, 2012, Dingmann filed a Notice of Intention to Discontinue Gilbertson's temporary total disability (TTD) benefits with the Office of Administrative Hearings. See Minn. Stat. § 176.238, subd. 1 (2016) (requiring notice before an employer may discontinue benefits). Dingmann asserted that it no longer owed TTD benefits because Gilbertson had refused a job offer that provided her "full hours and full wages on light duty work restrictions." Gilbertson contested the discontinuance, asserting in part that Dingmann's job offer was inconsistent with her Rehabilitation Plan. An administrative conference was held to determine whether Dingmann had "reasonable grounds to support the discontinuance." Minn. Stat. § 176.239, subds. 2, 6 (2016). The compensation judge granted Dingmann's request to terminate Gilbertson's TTD benefits, effective June 25, 2012.

Gilbertson filed an Objection to Discontinuance. See Minn. Stat. §§ 176.238, subd. 4, 176.239, subd. 8 (2016). Following a hearing,[3] the compensation judge found

---

1. A rehabilitation plan is a "form prescribed by the commissioner" of the Department of Labor and Industry. Minn. R. 5220.0410, subp. 2 (2015). Thus, the vocational goals are presented in the form as options that can be selected by checking a box.

2. Dingmann reasoned that, notwithstanding her earlier resignation, Gilbertson might have changed her mind in the intervening months and would therefore accept the job offer.

3. In addition to deciding Gilbertson's Objection to Discontinuance of TTD benefits, the compensation judge resolved the parties' dispute over Gilbertson's Requests for Rehabilitation Assistance filed on August 9, 2013, and October 10, 2013, and the issues presented by the Claim Petition filed on October 15, 2014. There is no issue before us regarding these additional benefit claims.

that the vocational goal in Gilbertson's Rehabilitation Plan was to return to work with a different employer in the same industry, but that the goal was based on Gilbertson's personal interest in finding a job that did not require on-call duties. Accordingly, the compensation judge concluded that Dingmann had established reasonable grounds to discontinue Gilbertson's TTD benefits because she refused a job offer of "gainful employment" that she could perform in light of her physical condition.

Gilbertson appealed and the WCCA reversed. *Gilbertson v. Williams Dingmann, LLC*, No. WC15-5878, 2016 WL 3262910 (Minn. WCCA May 2, 2016). The WCCA concluded that Dingmann was not entitled to discontinue TTD benefits because its job offer was not "consistent with [Gilbertson's] plan of rehabilitation," Minn. Stat. § 176.101, subd. 1(i). *Gilbertson*, No. WC15-5878, 2016 WL 3262910 at *6. According to the WCCA, "[t]he job offer, which expressly requires returning to work with the date of injury employer, is plainly inconsistent with the rehabilitation plan." *Id.* The WCCA also concluded that the "gainful employment" standard applied by the compensation judge is relevant only "where there is no filed rehabilitation plan." *Id.*

Dingmann filed a petition for a writ of certiorari challenging the WCCA's decision.

## ANALYSIS

This case requires us to determine whether, under Minn. Stat. § 176.101, subd. 1(i), an offer to return to work with the same employer is "consistent with" a rehabilitation plan that has as its vocational goal that the employee return to work in the same industry but with a different employer. We apply a de novo standard of review in interpreting statuto-

ry provisions in the Workers' Compensation Act. *Reider v. Anoka-Hennepin Sch. Dist. No. 11*, 728 N.W.2d 246, 249 (Minn. 2007). We are not bound by a WCCA decision that rests upon the application of a statute to undisputed facts. *Ekdahl v. Indep. Sch. Dist. No. 213*, 851 N.W.2d 874, 876 (Minn. 2014).

The first step in statutory interpretation is to examine the text of the statute to determine whether the language is ambiguous. *Zurich Am. Ins. Co. v. Bjelland*, 710 N.W.2d 64, 68 (Minn. 2006). "If a statute is unambiguous, then we must apply the statute's plain meaning." *State v. Hayes*, 826 N.W.2d 799, 804 (Minn. 2013) (quoting *Larson v. State*, 790 N.W.2d 700, 703 (Minn. 2010)). "In interpreting statutory language, we give words and phrases their plain and ordinary meaning." *In re Welfare of J.J.P.*, 831 N.W.2d 260, 264 (Minn. 2013).

We begin with an overview of the statutory requirements for rehabilitation plans. The goal of rehabilitation is "to restore the injured employee so the employee may return to a job related to the employee's former employment or to a job in another work area which produces an economic status as close as possible" to the pre-injury status. Minn. Stat. § 176.102, subd. 1(b) (2016). *See Wirtjes ex rel. Greenfield v. Interstate Power Co.*, 479 N.W.2d 713, 715 (Minn. 1992) ("Rehabilitation of a disabled employee is directed toward returning that employee to his or her established pre-injury employment status and to discontinuing workers' compensation benefits."). When a party requests a rehabilitation consultation, a qualified rehabilitation consultant develops a rehabilitation plan "in consultation with the parties." Minn. R. 5220.0410, subp. 2 (2015); *see* Minn. Stat. § 176.102, subd. 4 (2016). After considering the employee's "qualifications, including but not limited to age, education, previ-

ous work history, interest, transferable skills, and present and future labor market conditions," Minn. Stat. § 176.102, subd. 4(g), the QRC proposes and provides a rehabilitation plan to the parties, who can either "sign the plan signifying agreement" or object to the plan, Minn. R. 5220.0410, subp. 4 (2015). Once signed by all parties, the plan "is deemed approved by the commissioner." Minn. R. 5220.0410, subp. 6 (2015).

■■ After a rehabilitation plan is approved, TTD benefits shall be terminated under certain circumstances when a job offer is refused. Specifically, Minnesota Statutes § 176.101, subd. 1(i), provides:

> Temporary total disability compensation shall cease if the employee refuses an offer of work that is consistent with a plan of rehabilitation filed with the commissioner which meets the requirements of section 176.102, subdivision 4, or, if no plan has been filed, the employee refuses an offer of gainful employment that the employee can do in the employee's physical condition.

The parties agree that, under this statute, once a plan of rehabilitation has been filed with the commissioner, TTD compensation ceases *only* when the employee refuses a job offer that is "consistent with the plan of rehabilitation." Dingmann argues that consistency with a rehabilitation plan requires consideration of the totality of the circumstances, not just the box checked on the R-2 Rehabilitation Plan form. According to Dingmann, failure to consider the totality of the circumstances effectively elevates personal vocational goals over the objective of rehabilitation assistance, which is directed toward restoring the employee to pre-injury employment status. Thus, Dingmann contends, "[a]n employee's disability must be a required factor in determining whether a job offer is consistent with a plan of rehabilitation." Because the

job it offered Gilbertson would have restored her to the same date-of-injury position, at the same pre-injury wage, with reasonable accommodations for her physical restrictions, Dingmann argues that its job offer is consistent with Gilbertson's Rehabilitation Plan under the totality of the circumstances.

Gilbertson contends that Dingmann's job offer was clearly inconsistent with her Rehabilitation Plan because the listed vocational goal was to return to employment with a different employer. Gilbertson also argues that the WCCA considered the totality of the circumstances, including not only Gilbertson's personal preferences and family obligations, but also the fact that she "did not believe she could perform the job because there were only two licensed morticians who could embalm the body and there was no device to help lift limbs."

Minnesota Statutes § 176.101, subd. 1(i), does not explain what it means for a job offer to be "consistent with" a plan of rehabilitation. Nor have we interpreted this language previously. Absent statutory definitions, "we often look to dictionary definitions to determine the plain meanings of words." *Larson v. Nw. Mut. Life Ins. Co.*, 855 N.W.2d 293, 301 (Minn. 2014). The *American Heritage Dictionary* defines "consistent" as "[i]n agreement; compatible." *The American Heritage Dictionary of the English Language* 392 (5th ed. 2011). *Webster's* defines "consistent" as "marked by agreement and concord." *Webster's Third New International Dictionary* 484 (2002). *New Oxford* defines "consistent" as "compatible or in agreement with something." *New Oxford American Dictionary* 371 (3d. ed. 2010).

■■ All of these dictionary definitions lead to the same conclusion: "an offer of work that is consistent with a plan of rehabilitation" is simply a job offer that is compatible, or in agreement, with the re-

habilitation plan. Nothing in the Rehabilitation Plan to which all parties, including Dingmann, agreed required Gilbertson to accept a job offer from Dingmann, the date-of-injury employer. The Rehabilitation Plan, in fact, said that the vocational goal was to work elsewhere. Thus, we cannot conclude that the WCCA erred in holding that, under the plain language of the statute, Dingmann's job offer was inconsistent with Gilbertson's Rehabilitation Plan.

Dingmann, however, argues that allowing an employee to decline a job offer that meets an employee's physical limitations, simply for personal and family reasons, ignores the legislative objective of rehabilitation, *see* Minn. Stat. § 176.102, subd. 1(b) (providing that "[r]ehabilitation is intended to restore the injured employee so the employee may return to a job related to the employee's former employment ...."). We have stated that "provisions of Minnesota's workers' compensation statute should not be construed in isolation, but must be considered in light of related provisions of the statute." *Conwed Corp. v. Union Carbide Chem. & Plastics Co.*, 634 N.W.2d 401, 406 (Minn. 2001). We agree that the purpose of a rehabilitation plan is to assist the employee in returning to employment and to allow the employer to discontinue benefits. But "return[ing] to a job related to the employee's former employment" does not necessarily require the employee to return to the date-of-injury job. *See* Minn. Stat. § 176.102, subd. 1(b). *See also Wirtjes ex rel. Greenfield*, 479 N.W.2d at 715 ("Rehabilitation of a disabled employee is directed toward returning that employee to his or her estab-

lished pre-injury employment *status* and to discontinuing workers' compensation benefits." (Emphasis added.)). Because nothing in the plain language of the statute imposes this limitation, we cannot read the statute as broadly as Dingmann proposes. *See Shire v. Rosemount, Inc.*, 875 N.W.2d 289, 296 (Minn. 2016) (rejecting a proposed interpretation of a statute that would give it a meaning contrary to its plain meaning).

Nor does our interpretation of Minn. Stat. § 176.102, subd. 1(b), suggest that an employee's personal obligations necessarily be accommodated in the vocational goals listed on the employee's rehabilitation plan.[4] We are simply enforcing the terms to which the parties in this case agreed; our decision does not impose extra-statutory conditions. Here, by virtue of their signatures on the Rehabilitation Plan, the parties *agreed* that Gilbertson would return to a job with a different employer, not with Dingmann. Dingmann had an opportunity to object to the terms of the Rehabilitation Plan, but it did not; it is now bound by the terms of the agreement.

Accordingly, we conclude that under the plain language of Minn. Stat. § 176.101, subd. 1(i), an offer to return to work with the same employer is not "consistent with" an employee's rehabilitation plan that states that the vocational goal is to return to work with a different employer. *See Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 836 (Minn. 2012) ("If the language of the statute is clear and free from ambiguity, the court's role is to enforce the language of the stat-

---

4.  Minnesota Statutes § 176.102, subd. 4(g), provides that "[i]n developing a rehabilitation plan consideration shall be given to the employee's qualifications, including but not limited to age, education, previous work history, *interest*, transferable skills, and present and future labor market conditions." (Emphasis added.) At oral argument, the parties briefly discussed whether the term "interest" in this provision is limited to an employee's professional interest. But because the parties do not raise these arguments in their briefs, the arguments are not properly before us.

ute and not explore the spirit or purpose of the law.").[5]

## CONCLUSION

For the foregoing reasons, we affirm the decision of the Workers' Compensation Court of Appeals.

## CONCURRENCE

ANDERSON, Justice (concurring).

It might be helpful to state clearly what underlies this workers' compensation dispute. The employee, for legitimate personal reasons, wants a different work environment. The employer is unable to accommodate the wishes of the employee and the employee plans to leave the workplace a couple of months later and gives notice to that effect. Meanwhile, the employee suffers a work-related injury and the employer and employee sign off on a routine rehabilitation form that reflects the employee's desire for a different work environment. The employer offers the employee what amounts to her previous position and the employee, understandably, declines to accept that offer.

Then our court arrives on stage and, as a matter of statutory interpretation, applies the plain language of the statute and announces that the employee, by virtue of the Rehabilitation Plan agreed to by the parties, is entitled to continued benefits despite the job offer by the employer.

But, in the real world, what has just happened is that the employer has just been ordered to continue financial benefits for a departing employee while she searches for employment from her employer's competitor. And the employer cannot limit its continuing liability by offering the employee equivalent employment. Indeed, it seems likely that even if the employer had custom-designed a new position to meet every possible demand of the employee (save her desire to work somewhere else), the plain language of the rehabilitation form and the statute would empower the employee to continue her search for employment in the "same industry" but with a "different employer" even though her stated goals were otherwise met.

Additional complications also are likely as a result of our decision. Employers may be less likely to rely on the recommendations of qualified rehabilitation consultants. Employers may seek more review by legal counsel of workers' compensation forms previously thought "routine." There may be less interest in accommodating employee requests for return-to-work goals in a QRC plan.

I concur in the opinion of the court because the plain language of the statute requires affirming the WCCA here. We should recognize, however, that the results here are inconsistent with the goals of restoring injured employees to "pre-injury employment status and to discontinuing workers' compensation benefits." *Wirtjes ex rel. Greenwood v. Interstate Power Co.*, 479 N.W.2d 713, 715 (Minn. 1992).

---

5. Based on our conclusion that Dingmann's job offer was inconsistent with the terms of Gilbertson's Rehabilitation Plan, we do not address the WCCA's alternative holding: that the compensation judge erred in applying a "gainful employment" standard to evaluate Gilbertson's rejection of Dingmann's job offer.