ANDERSON, Justice (dissenting).
The question here is whether workers' compensation liability on the part of respondent City of Minneapolis for appellant Keith Daniel's ankle injuries"is exclusive and in the place of" disability-accommodation liability for the same injuries. Because Daniel's failure-to-accommodate claim is "on account of" the same physical injuries that gave rise to the City's workers' compensation liability, I would hold that the City's workers' compensation liability is exclusive. In concluding otherwise, the court undermines the foundational exclusivity principle on which our workers' compensation system rests, ignores the plain statutory language of the exclusivity provision, and overrules our decision in Karst v. F.C. Hayer Co. , 447 N.W.2d 180 (Minn. 1989), without addressing the principles upon which it stands. I respectfully dissent.
I.
I begin with the statutory text of the exclusivity provision. Statutory interpretation is a question of law, which we review de novo. Webster v. Hennepin County , 910 N.W.2d 420, 430 (Minn. 2018). Our object in statutory interpretation is to ascertain and effectuate the intent of the Legislature. See Minn. Stat. § 645.16 (2018). We read the text of a statute according to its plain and ordinary meaning. State v. Prigge , 907 N.W.2d 635, 638 (Minn. 2018). We must construe a statute "to give effect to all its provisions." Minn. Stat. § 645.16.
There is no question that the City incurred liability to Daniel under the Minnesota Workers' Compensation Act. "The liability of an employer prescribed by this chapter" is "to pay compensation in every case of personal injury or death of an employee arising out of and in the course of employment without regard to the question of negligence."See Minn. Stat. § 176.021, subd. 1 (2018). Daniel suffered personal injuries to his ankle during his employment with the City and settled workers' compensation claims against the City, based on those injuries, for about $125,000.
The question is what other liability is displaced by the City's workers' compensation liability. The exclusivity provision of the workers' compensation act, as relevant here, states that "[t]he liability of an employer prescribed by this chapter is exclusive and in the place of any other liability to such employee ... on account of such injury...." Minn. Stat. § 176.031 (2018). This provision "has been a part of workers' compensation law in Minnesota since its inception in 1913" and operates as a quid pro quo. U.S. Specialty Ins. Co. v. James Courtney Law Office, P.A. , 662 N.W.2d 907, 911 (Minn. 2003) ; see also Quid pro quo , Black's Law Dictionary (10th ed. 2014) (Latin: "something for something ... a substitute"). One liability is substituted for another-the "liability prescribed by" chapter 176 displaces "any other liability ... on account of such injury." Cf. Sandy v. Walter Butler Shipbuilders, Inc. , 221 Minn. 215, 21 N.W.2d 612, 614 (1946) ("[T]he compensation act in its origin and development is substitutionary and exclusive of all other remedies ...."). This substitution is the bargain an employer accepts by "assum[ing] a new liability *655 without fault" in return for which the employer "is relieved of the prospect of large damage verdicts." 9 Lex K. Larson, Larson's Workers' Compensation Law § 100.01[1] (Matthew Bender Rev. ed. 2017); see also Boryca v. Marvin Lumber & Cedar , 487 N.W.2d 876, 879 n.3 (Minn. 1992) (stating that "[t]he whole scheme of workers' compensation is one of reciprocal concessions by the employer and employee," which "some call an 'industrial bargain' "); Wandersee v. Brellenthin Chevrolet Co. , 258 Minn. 19, 102 N.W.2d 514, 516-17 (1960) (explaining that "in exchange for being made liable without fault, the employer is given an immunity from the hazards of a common-law action by his injured employee" and that liability is "exclusive and in the place of any other liability to the employee").
When liability for a compensable injury arises, the workers' compensation act is exclusive. "The workmen's compensation act, insofar as it provides any compensation to an employe accidentally injured in the course of his employment, is exclusive of all other remedies." Breimhorst v. Beckman , 227 Minn. 409, 35 N.W.2d 719, 732 (1949) (emphasis added). "An injury is compensable and subjects the employe to coverage by the Workmen's Compensation Act as his sole and exclusive remedy if by reason thereof he is entitled to receive any compensation under the act ...." Frank v. Anderson Bros. , 236 Minn. 81, 51 N.W.2d 805, 807 (1952) ; see also Hyett v. Nw. Hosp. for Women & Children , 147 Minn. 413, 180 N.W. 552, 552-53 (1920) (holding that an employee whose work-related injury was compensated under the act, but whose "associate[d] injury not amounting to a disability, either temporary or otherwise and for which no compensation is provided," cannot pursue a separate tort claim). It is undisputed that Daniel received compensation and medical benefits under chapter 176.
Of course, the exclusivity provision does not govern an injury that did not arise out of or in the course of employment. See Kaluza v. Home Ins. Co. , 403 N.W.2d 230, 235 (Minn. 1987). Thus, the exclusive remedy provided by chapter 176 extends only to a claim that is "on account of such injury ," Minn. Stat. § 176.031 -that is, a claim that is made on account of the same injuries that were the basis of the employee's workers' compensation claim that established the City's liability.
"On account of" is not defined in chapter 176. "Absent statutory definitions, we often look to dictionary definitions to determine the plain meanings of words." Gilbertson v. Williams Dingmann, LLC , 894 N.W.2d 148, 152 (Minn. 2017) (citation omitted) (internal quotation marks omitted). "On account of" means "by reason of" or "because of." Webster's Third New International Dictionary 13 (2002). Thus, the liability under the workers' compensation act is "exclusive of" any other liability that an employer has to an employee "by reason of" or "because of" the covered injury. Accepting as true the allegations that the City failed to accommodate Daniel's ankle injuries, this failure-to-accommodate claim is "by reason of" or "because of" his work-related ankle injuries. The liability prescribed by the workers' compensation act therefore is exclusive.
II.
We reached this same conclusion in Karst . In that case, the employee sought to recover damages under the Minnesota Human Rights Act because his employer failed to rehire him after he received workers' compensation benefits for a shoulder injury. 447 N.W.2d at 182-83. The employer also "flatly refused to discuss any accommodations" that would have allowed the employee to return to work in some *656 position. Id . at 183. The specific question we addressed was whether "injuries resulting from disability discrimination [are] within the coverage of the Minnesota Workers' Compensation Act." Id . at 184. To answer this question, we focused on two issues.
First, we asked whether the employee's injury-failing to be rehired-fell within the workers' compensation act. We noted that the employee's failure-to-rehire injury "may be conceptually distinct from his work-related injuries," but the exact nature or cause of the injuries was "immaterial" and "not the issue in this case." Id . The issue was "whether the [workers' compensation act] provides a remedy for [the] injuries." Id . The workers' compensation act at the time of Karst's injury awarded him compensation for the employer's failure to rehire him. This remedy, we stated, was "clear evidence that the legislature intended the decision of whether or not to rehire an injured worker and the consequences flowing from that decision to be within the scope of the [Act]." Id . Thus, we concluded, the "liability ... prescribed by this chapter," Minn. Stat. § 176.031, displaced the human rights claim on account of the same injury.
Second, although the human rights act also provided a remedy for a discriminatory failure-to-rehire claim, see Karst , 447 N.W.2d at 185 (discussing Minn. Stat. § 363.03 (1988) ), we were unconvinced that the Legislature "intend[ed] to authorize virtually every injured worker who is not rehired to bring a disability discrimination action," id . Further, the employee had already collected the benefits provided by the workers' compensation act, and thus was not "without a remedy." Id . at 186. But because "dual liability will fundamentally change the workers' compensation system," we concluded that "[s]uch a dramatic change in employer liability should be made, if necessary, by the legislature following hearings and legislative debate." Id . Thus, "in the absence of a clear legislative intent to impose the liability of the Human Rights Act in addition to that under the Workers' Compensation Act," we held that Karst's sole remedy was under the latter. Id.
III.
Our decision in Karst stands on three principles that are central to the workers' compensation system. First, we have historically viewed exceptions to the exclusive remedy provided by the workers' compensation act narrowly. See, e.g. , Meintsma v. Loram Maint. of Way, Inc. , 684 N.W.2d 434, 439 (Minn. 2004) (stating that "[w]e have narrowly construed the assault exception" when rejecting an employee's argument that an injury claim was excluded from workers' compensation coverage); Gunderson v. Harrington , 632 N.W.2d 695, 703 (Minn. 2001) (requiring that an employer "consciously and deliberately intend[ ] to injure" an employee for the intentional-injury exception to apply); Kaess v. Armstrong Cork Co. , 403 N.W.2d 643, 644 (Minn. 1987) ("Through the years we have upheld the legislative mandate of the exclusive remedy provision by maintaining the narrowness of the intentional tort exception."); see also Flaherty v. Lindsay , 467 N.W.2d 30, 33 (Minn. 1991) (applying a "narrow construction of the term 'obstruction' " when rejecting an employee's tort claim for interference with benefits "in deference to the mandate of exclusivity"); Bergeson v. U.S. Fid. & Guar. Co. , 414 N.W.2d 724, 727 (Minn. 1987) (requiring clear and convincing evidence of an employer's obstruction of a claim for benefits, done "in a manner which is egregiously *657 cruel or venal").[1]
Second, we have repeatedly rejected attempts to divide work-related injuries into personal injuries compensable by workers' compensation and separate consequences of those injuries that are compensable outside of the workers' compensation system. For example, in Frank , an employer negligently caused a bucket of hot tar to spatter on the plaintiff's face, head, neck, and body. 51 N.W.2d at 806. Although the employee received compensation for his medical expenses, he was not compensated for the resulting permanent disfigurement because the burns did not affect his employability. Id. at 806-07. We rejected his common-law claim based on "consequent embarrassment and humiliation," stating that "[i]f an accident produces certain injuries which in part entitle the employe to compensation benefits of any kind and such accident simultaneously therewith also causes the employe to sustain a serious permanent disfigurement which does not affect his employability, the employe's sole and exclusive remedy is under the Workmen's Compensation Act." Id. at 806-08. Similarly, in Breimhorst , an employee was injured when a spring gun, concealed in the employer's linen cabinet, discharged and caused flecks of powder to become embedded in her face, neck, arms, upper chest, and eyes. 35 N.W.2d at 724. Workers' compensation covered the employee's medical expenses. See id. The employee sued the employer, seeking to recover damages for the injury not covered by workers' compensation benefits-disfigurement. See id. at 731. We said: "It is elementary that a single wrongful act affecting only one person gives rise to but a single cause of action." Id. at 732. Thus, the remedy provided by the workers' compensation act was the employee's exclusive remedy for all injuries on account of the work-related injury. Id .
Third, as we did in Karst , we have consistently called upon the Legislature to amend the exclusivity provision if in fact the Legislature intends to allow employees to pursue claims against employers outside the workers' compensation system for work-related injuries. "[C]hange should come about by legislation and not by rule of court," Hyett , 180 N.W. at 553, because the Legislature must "limit or extend the operation of its enactments," Donnelly v. Minneapolis Mfg. Co. , 161 Minn. 240, 201 N.W. 305, 307 (1924). The remedy provided by the workers' compensation act is "solely a creature of statute" based on "policy decisions" that "are properly for the legislature." Meils ex rel. Meils v. Nw. Bell Tel. Co. , 355 N.W.2d 710, 713 (Minn. 1984) (emphasis added). "[T]he rule of exclusiveness of remedy may seem harsh, but the remedy therefor is wholly legislative." Frank , 51 N.W.2d at 808 ; cf. Costly v. City of Eveleth , 173 Minn. 564, 218 N.W. 126, 127 (1928) (stating that loosening the "restrictive definition" of "accident" under the former workers' compensation act "requires amendment rather than construction[,] ... and amendment is not for us"). In deference to the Legislature's central role in maintaining the balance between employer and employee, we have declined to do precisely what the court does here: create new rights for employees, outside of the workers' compensation act, to remedy *658 work-related injuries. See Minn. Brewing Co. v. Egan & Sons Co. , 574 N.W.2d 54, 62 (Minn. 1998) (declining to "carve out a wholly new cause of action" by allowing an employer's subrogation claim for workers' compensation benefits against a common-enterprise party, stating that "[c]reating a new right that is not within the language of Minnesota's statutory workers' compensation scheme, and is in fact contradictory to the plain language of the Act," is a "role ... fulfilled solely by the legislature"); see also Parsonv. Holman Erection Co. , 428 N.W.2d 72, 76 (Minn. 1988) (warning against "judicial reconstruction of the Workers' Compensation Act" as the Legislature, not the court, must "judge the social utility of this statutory system, which has no common law counterpart, to balance the interests of employees and employers, and to make whatever adjustments and corrections it deems appropriate.").
IV.
Apart from failing to consider the principles that support our decision in Karst , the court fails to appreciate the troubling consequences of its decision. The court's reasoning undermines workers' compensation exclusivity, implicates double-recovery by employees, and likely will result in a proliferation of failure-to-accommodate litigation over workplace injuries.
Tellingly, the "on account of" language in the statute that guides my reading plays no part in the court's analysis. Rather, the key distinction that drives the analysis of the court is that an ankle injury differs in kind from a human rights violation. The court states that the human rights act "provides a distinct cause of action that redresses a discrete type of injury to an employee." Unlike the workers' compensation act, which provides a remedy for discrete categories of personal injury, the human rights act provides a remedy for an injury to an employee's dignity and self-respect.[2]
Taken at face value, this analysis guts the exclusivity provision. For example, "[t]here is no place in compensation law for damages on account of pain and suffering, however dreadful they may be." 1 Larson, supra , § 1.03[4]. But as we noted nearly a century ago, "[e]very personal injury causes pain and suffering ... [and some personal injuries] must be carried through life to the mental distress of the victim." Hyett , 180 N.W. at 552 (emphasis added). This means that an action for pain and suffering damages always "redresses a discrete type of injury" that the workers' compensation act does not. Under the court's logic, this action would always lie for workplace injuries, section 176.031 notwithstanding. If the court really means what it appears to say-that any discrete injury not specifically redressed by the workers' compensation act can be redressed outside the workers' compensation act-then the exclusivity provision, the quid pro quo, the one liability for another, the legislative bargain, are all nothing but words. If we allow employees to pursue claims outside the workers' compensation system "in every case where some injury not mentioned in the act was present," then the workers' compensation act will *659 "become a farce." Case Comment, Recent Cases , 34 Minn. L. Rev. 134, 176 (1950) (discussing Breimhorst ).
The result is not much better if the court's analysis is limited to the facts of this case. Even so limited, the result here implicates more than simply a recovery by Daniel. That is because the workers' compensation act establishes a structure for rehabilitating injured employees that can include accommodations to allow the employee to continue in the job. See Minn. Stat. § 176.102, subd. 4(a) (2018) (stating that a "rehabilitation consultation must be provided by the employer to an injured employee upon request," and "[i]f the consultation indicates that rehabilitation services are appropriate ... the employer shall provide the services"). In some cases, the rehabilitation services that the employer must provide specifically include "job modification." See Minn. R. 5220.0100, subp. 29 (2017) (defining "rehabilitation services" as a "program consist[ing] of the sequential delivery and coordination of services by rehabilitation providers ... [that] may include, but are not limited to, vocational evaluation, counseling, job analysis, job modification , job development, [and] job placement" (emphasis added)). There is little doubt that "accommodation" under the human rights act overlaps with "job modification" under the workers' compensation act. Compare Minn. Stat. § 363A.08, subd. 6(a) (2018) (defining "reasonable accommodation" as "steps which must be taken to accommodate ... a qualified disabled person" that may include, for example, "job restructuring, modified work schedules, reassignment to a vacant position, [and] acquisition or modification of equipment or devices"), with Minn. R. 5220.0100, subp. 17 (2017) (defining "job modification" as "altering the work environment to accommodate physical or mental limitations by making changes in equipment, in the methods of completing tasks, or in job duties" (emphasis added)).[3]
The holding today therefore implicates double-recovery by employees. Almost any work-related injury carries with it the seeds of a failure-to-accommodate claim, and as just seen, both the human rights act and the workers' compensation act provide a potential remedy. In the past, we have not allowed an injured employee to proceed with claims that duplicate the remedies provided by chapter 176. See, e.g. , McDaniel v. United Hardware Distrib. Co. , 469 N.W.2d 84, 85 n.1 (Minn. 1991) (noting that a "common law action for obstruction of workers' compensation benefits ... might be barred by the exclusive remedy provision" in chapter 176 because the workers' compensation law "permits a penalty for a refusal to pay or a delay" in paying benefits); Fox v. Swartz , 228 Minn. 233, 36 N.W.2d 708, 710-11 (1949) (holding that the benefits provided by the workers' compensation act were exclusive of the remedy provided by the civil damages section of the Liquor Control Act). But under the new regime the court has created (without the benefit of legislation), an employee now has a right to seek workers' compensation benefits, which may include rehabilitation, job modification, and accommodation, and a contemporaneous right to seek remedies under the human rights act for an employer's alleged failure to accommodate. If the Legislature really intended claims under the two exclusive statutes to coexist (as the court insists), *660 there is little doubt which statute an employee seeking accommodation will choose, when a claim under the human rights act allows treble actual damages, pain and suffering damages, punitive damages, and opportunities for recovery of attorney fees.[4] See Minn. Stat. § 363A.29, subd. 4(a) (2018).
The inevitable effect of the holding here is an expansion of failure-to-accommodate litigation. But, a key purpose of exclusivity is that employers be "relieved of the prospect of large damage verdicts." See 9 Larson, supra , § 100.01[1] (emphasis added); see also Lunderberg v. Bierman , 241 Minn. 349, 63 N.W.2d 355, 364-65 (1954) (stating that a purpose of the act is "to protect the employer against the hazards and expense of litigation"). Allowing accommodation claims for treble actual damages, pain and suffering damages, punitive damages, and attorney fees is not consistent with this purpose. Exclusivity under the workers' compensation act eliminates costly and protracted litigation over workplace injuries; the court here invites it. By allowing claims related to the accommodation of workplace injuries under the human rights act, the court disrupts the quid pro quo of Minn. Stat. § 176.031 by judicial reconstruction. It is not just Karst but perhaps the bargain struck between employer and employee, and codified by the Legislature, that is overturned.
V.
Daniel's failure-to-accommodate claim exists only because he suffered ankle injuries for which he has received compensation under the workers' compensation act. The City's liability under the human rights act is "on account of" Daniel's compensated injuries. Therefore, I would hold that the district court is deprived of jurisdiction over Daniel's failure-to-accommodate claim by reason of Minn. Stat. § 176.031.
The objectives of Minnesota's human rights act are worthy, and the court identifies valid policy reasons for ensuring that those objectives are widely available to employees. But whether and how those policies should be advanced in the context of a work-related injury is a legislative decision. See Dukowitz v. Hannon Sec. Servs ., 841 N.W.2d 147, 153 (Minn. 2014) (explaining that the Legislature is "equipped to balance the competing interests of employers, employees, and the public" in workplace matters).
When in Karst we held that the workers' compensation act was exclusive over the human rights act, we ended that decision by observing that "[i]f we have incorrectly defined the legislative intent, the legislature may quickly correct us." 447 N.W.2d at 186. Today we ignore not only this observation about legislative response to our interpretation but also a caution we *661 offered nearly a century ago: if there is to be a change in the law, "change should come about by legislation and not by rule of court." Hyett , 180 N.W. at 553.
For the foregoing reasons, I respectfully dissent.

The City's insistence on one, but not another, shoe type may not have been a wise course of action in attempting to deal with this employee's work conditions. But this point does not take Daniel's claim outside the exclusive remedy provided by the workers' compensation act. It is worth noting that the facts here are not close to the hypothetical offered at oral argument where an employer "viciously harasses" and "denigrates" an employee with a limp, which under the cases cited above, could lead to a different exclusivity result. But we need not answer this hypothetical question today.

Contrary to the court's claim, I do not conflate a physical injury with disability discrimination. I admit these injuries are distinct. But the fact that one injury is distinct from another misses the point. The relevant question is whether the injury alleged to fall outside the workers' compensation act is "on account of" a compensable injury. See Minn. Stat. § 176.031. The court does not dispute that the City's alleged failure to accommodate Daniel's ankle injuries was "on account of" the same ankle injuries for which Daniel has received compensation. Absent narrow exceptions, see, e.g. , Meintsma , 684 N.W.2d at 439, or further legislative enactment, this should be the end of our inquiry.

My approach therefore does not "immunize" from liability employers who fail to accommodate employees disabled by workplace injuries. Following the plain language of Minn. Stat. § 176.031 and principles of exclusivity, my approach limits the liability of employers to that prescribed by the workers' compensation act, including liability for rehabilitation services.

The court concedes that double-recovery is not permitted but allows an employee to pursue coexisting workers' compensation and failure-to-accommodate claims concurrently. This is in apparent tension with the doctrine of election of remedies: a party must "adopt one of two or more coexisting and inconsistent remedies which the law affords the same set of facts ." Vesta State Bank v. Indep. State Bank of Minn. , 518 N.W.2d 850, 855 (Minn. 1994) (emphasis added). There is only one set of facts here-Daniel suffered a work-related injury for which he was entitled to both job modification or accommodation under the workers' compensation act and-according to the court-accommodation under the human rights act. Daniel has "adopt[ed]" his remedy by settling his workers' compensation claim. But "once an available remedy is taken to its conclusion, the party cannot thereafter assert a new theory to enhance recovery." Nw. State Bank, Osseo v. Foss , 293 Minn. 171, 197 N.W.2d 662, 666 (1972). Suffice it to say that the court's opinion leaves much unsaid in explaining the interaction of these two statutory causes of action with the doctrine of election of remedies.